*509
 
 STUART, Justice.
 

 Jefferson County and the members of the Jefferson County Commission (hereinafter referred to collectively as “the County”) appeal the judgment entered by the Jefferson Circuit Court prohibiting the County from reducing the budget of Dan Weinrib, the duly elected tax assessor of Jefferson County, or from reducing the number of hours employees in Weinrib’s office are authorized to work. We reverse and remand.
 

 I.
 

 On January 12, 2009, the Jefferson Circuit Court, in a separate action styled
 
 Jessica Edwards v. Jefferson County,
 
 CV-07-900873, entered an order holding that the business-license and occupational taxes then being levied by Jefferson County were unlawful because Act No. 406, Ala. Acts 1967, which authorized the levy of those taxes, had been repealed in 1999 by Act No. 99-669, Ala. Acts 1999. Jefferson County appealed that decision; however, while the case was pending on appeal, the County also began planning ways to reduce spending because, if the trial court’s decision in
 
 Edwards
 
 was upheld on appeal, the County would not receive approximately $75 million in revenues it had included when preparing its budget for the 2008-2009 fiscal year.
 
 [1]
 
 Section 11-8-3, Ala. Code 1975, mandates that “appropriations made in the [county] budget shall not exceed the estimated total revenue of the county available for appropriations.”
 

 As part of its cost-cutting plan, the County, on March 11, 2009, requested that all elected officials and department heads prepare plans for reducing their respective budgets by 33%. On June 16, 2009, the County adopted a resolution reducing the workweek of all eligible employees from 40 hours to 32 hours, and, on June 30, 2009, the County adopted a resolution reducing appropriations by 33% for the remainder of the fiscal year. On July 21, 2009, the County, needing to reduce spending even further, announced a plan to place a substantial number of county employees on administrative leave without pay for the period from August 1, 2009, to September 11, 2009.
 

 As a result of these measures, the budget for the tax assessor’s office was reduced from $892,980 to $819,309, and 10 employees in that office were to be placed on administrative leave without pay.
 
 [2]
 
 On July 31, 2009, Weinrib filed the underlying action in the Jefferson Circuit Court seeking a declaratory judgment, a preliminary and permanent injunction, and a writ of mandamus and/or a writ of prohibition to block the County from reducing the budget of the tax assessor’s office or from reducing the number of hours worked by any of the employees in that office by placing those employees on administrative leave. Weinrib alleged that, by statute, he was entitled to $5,967,131 for the 2008-2009 fiscal year through May 31, 2009, in commissions based upon the dollar value of taxes collected by the tax collector for Jefferson County and that the County had wrongfully withheld that money. The County filed a response to Weinrib’s action, arguing that he was paid by salary and that, therefore, any statutes providing that county tax assessors were entitled to
 
 *510
 
 commissions based on taxes collected did not apply to him.
 

 The trial court held an evidentiary hearing on August 5, 2009, and that same day entered an order declaring that Weinrib was entitled to receive the $5,967,131 in commissions that he claimed he was due. However, the trial court also held that that amount exceeded the $892,000
 
 [3]
 
 necessary to fully fund the tax assessor’s office. It therefore did not award Weinrib the full $5,967,181; instead, it issued a permanent injunction prohibiting the County from reducing Weinrib’s budget from its original $892,000 or from reducing the number of hours worked by any of the employees in Weinrib’s office. The County appeals.
 

 II.
 

 The first issue presented in this appeal is one of statutory construction; accordingly, we review de novo the trial court’s judgment on that issue.
 
 Whitehurst v. Baker,
 
 959 So.2d 69, 70 (Ala.2006) (“Because the issues presented by these appeals concern only questions of law involving statutory construction, the standard of review is de novo.”) (citing
 
 Taylor v. Cox,
 
 710 So.2d 406 (Ala.1998)).
 

 The statute at the center of this dispute is § 40-4-2, Ala.Code 1975, which provides, in relevant part:
 

 “The tax assessor shall be entitled to receive from the tax collector, out of the first money collected by him, giving duplicate receipts therefor, one of which receipts shall be forwarded to the Comptroller by the tax collector, the following commissions: In counties where the collections, not including taxes on real estate bid in by the state at tax sales and taxes which would be due on property except for the provisions of the law exempting homesteads from state taxes, do not exceed $12,000, the rate shall be 10 percent on the first $5,000, five percent on the next $4,000 and four percent on the remainder. The commission herein provided for is to be calculated on collections for real property and personal property, except motor vehicles, for the general fund of the state and county. In counties where collections, not including taxes on property bid in by the state at tax sales and taxes which would be due on property except for the provisions of the presently applicable law exempting homesteads from state taxes, exceed $12,000, the commission shall be as above declared up to $12,000, and one and one-half percent on the remainder up to $15,000, and one percent on the remainder above $15,000. The commissions for assessment of taxes on motor vehicles for the general fund of the state and county shall be calculated on the same basis and at the same rate as provided for the assessment of taxes on real property and personal property other than motor vehicles for the general fund of the state and county. The amount of the commission on taxes which would be due on property except for the provisions of the presently applicable law exempting homesteads from state taxes shall inure to the benefit of the General Fund of the state only and shall be covered into the State Treasury to the credit of said fund. He shall also be entitled to receive two percent on all collections made by the tax collector of special taxes, whether such special taxes are levied for the state or county, to be paid out of such special taxes. The tax assessor shall receive two percent commission on all special county or district
 
 *511
 
 taxes levied for school purposes, but he shall not receive such commissions on such special school taxes unless he has properly apportioned such special taxes.”
 

 Weinrib argues that, under the clear language of this statute and based upon the dollar value of the taxes collected in Jefferson County, he is entitled to $5,967,131 in commissions for the period from October 1, 2008, through May 31, 2009.
 

 The County, however, argues that Wein-rib is not entitled to any commissions under § 40-4-2 because he is paid a salary and, the County argues, § 40-6A-6, Ala. Code 1975, enacted by the legislature in 1982, specifically provides that “[a]ll fees, commissions, allowances, or other compensation heretofore collected by or paid to officials on a fee basis of compensation shall hereafter be paid into the general fund of their respective counties.” The County argues that the legislature’s intent in enacting this statute — that county tax and revenue officials no longer receive any fees or commissions once they become salaried employees — is echoed in other statutes, including § 40-4-3, Ala.Code 1975, and § 1-3-6, Ala.Code 1975. Section 40-4-3 provides:
 

 “In all counties where the tax assessor is paid on a salary instead of a fee basis, all fees allowed under the terms of this title shall by said tax collector be paid into the county treasury, or to such officials performing the duties of county treasurer.”
 

 Section 1-3-6 provides:
 

 “In all counties and cities where officials are paid on a salary basis instead of a fee basis, all fees required under the terms of this Code to be paid to or collected by such officials shall be paid by said officials into the treasury of the county or municipality or to the official performing the duties of county treasurer or municipal treasurer except as otherwise provided by law.”
 

 The County acknowledges that, in accordance with its interpretation of these statutes, it uses the commissions to which Weinrib claims to be entitled to fund the general costs of government.
 
 [4]
 

 We agree with the County that, upon consideration of these statutes, Wein-rib is not entitled to any commissions under § 40-4-2. “The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute.”
 
 IMED Corp. v. Systems Eng’g
 
 Assocs.
 
 Corp.,
 
 602 So.2d 344, 346 (Ala.1992). In doing so, this Court must give the words in a statute their “plain meaning.”
 
 Id.
 
 Moreover, statutes concerning the same subject matter are to be read
 
 in pari materia
 
 and should
 
 *512
 
 be construed together to ascertain the meaning of each.
 
 Ex parte Weaver,
 
 871 So.2d 820, 824 (Ala.2003). Weinrib emphasizes that § 40-4-2 unambiguously states that “[t]he tax assessor
 
 shall be entitled to receive ...
 
 the following commissions” and argues that no further analysis is necessary because, he notes, when used in a statute, “[t]he word ‘shall’ is clear and unambiguous and is imperative and mandatory.”
 
 Ex parte Prudential Ins. Co. of America,
 
 721 So.2d 1135, 1138 (Ala.1998). However, such an interpretation of § 40-4-2 would require us to ignore the plain language of § 40-6A-6, § 40-4-3, and § 1-3-6.
 

 The principles that guide us in construing statutes require us “to harmonize them as much as practical.”
 
 Peebles v. Mooresville Town Council,
 
 985 So.2d 388, 394 n. 5 (Ala.2007). Doing so in this case compels us to conclude that the commission schedule set forth in § 40^1-2 still has a field of operation insofar as there may be counties whose tax assessors are not paid on a salary basis; however, it has no application in those counties in which the tax assessors receive a salary.
 
 [5]
 
 This interpretation gives effect to all the relevant statutes and, contrary to Weinrib’s assertion, does not require a holding that § 40-4-2 has been repealed by implication when “[r]epeal by implication is not favored.”
 
 City of Birmingham v. Southern Express Co.,
 
 164 Ala. 529, 538, 51 So. 159, 162 (1909).
 

 Moreover, we note that our interpretation of these statutes today finds support in previous caselaw on this subject. In
 
 Jefferson County v. Waldrop, 207
 
 Ala. 606, 608, 93 So. 540, 541 (1922), Justice Gardner, although dissenting from the ultimate holding reached by the Court, provided the following background on the transition from a fee basis of compensation for certain Jefferson County officials to a salary basis:
 

 “It is a matter of common knowledge that in some of the larger counties of this state the fee system was considered an evil, and particularly so in Jefferson county, and in order for that county to eliminate the fee system then in vogue for its officers an amendment to the Constitution was adopted, known as the Jefferson county salary amendment, which by its terms gave to the Legislature a discretion in regard to the fixing of compensation of the county officers of that county. This amendment was adopted in November, 1912, and pursuant thereto the Legislature of 1915 passed a salary bill for the officers of Jefferson county. It was a local act, applicable alone to that county. The first section of this act expressly states that the compensation of these officers should be changed, and that they should be paid an annual salary in lieu of all other compensation, fees, or emoluments. We quote from section 1 the following:
 

 ‘“That the method and basis of compensation of the following officers of Jefferson county, to wit, the sheriff, the judge of probate, the tax collector, the tax assessor, the clerk of the cir
 
 *513
 
 cuit court, the clerk of the criminal court, and register in chancery of said county
 
 be changed,
 
 and that
 
 said officers be paid an annual salary,
 
 which shall be paid to and received by said officers
 
 in lieu of all other compensation, fees or emoluments.’
 
 (Italics supplied [in
 
 Waldrop
 
 ].)
 

 “... Section 2 of the act reads as follows:
 

 “ ‘That when this act goes into effect, the cost, charges of courts, fees and commissions now authorized by law to be collected and retained by the several officers of Jefferson county above named, shall continue to be collected, but shall be paid into the county treasury by the officer collecting the same, as other moneys belonging to the county are paid.’ ”
 

 We agree with Justice Gardner that the transition to compensating tax assessors by salary instead of fees and commissions was an effort “to eliminate the fee system.” All the relevant statutes support the conclusion that the fee system and the salary system of compensation are mutually exclusive and that, where the salary system has been adopted, the fee system ceases to exist. Accordingly, because he is paid by salary, Weinrib has no claim to the $5,967,131 in commissions to which he says he is entitled under § 40-4-2.
 

 III.
 

 Weinrib nevertheless argues that we should still affirm the judgment of the trial court because, he says, the County has failed to provide him with the means necessary for the “proper and efficient conduct” of his office, as required by § 40-6A-5, Ala. Code 1975, and, he claims, he is accordingly unable to fulfill his statutory duties. See
 
 Wilson v. Athens-Limestone Hosp.,
 
 894 So.2d 630, 634 (Ala.2004) (“[T]his Court can affirm a trial court’s judgment for any reason, even one not specifically given by the trial court.”). Section 40-6A-5 provides:
 

 “The governing bodies of each of the counties of this state shall provide the tax assessor [and other enumerated tax and revenue officials] with such office personnel, clerks, and deputies, and such quarters, books, stationery, furniture, equipment, and other conveniences and supplies as may be necessary for the proper and efficient conduct of such offices.”
 

 After holding an evidentiary hearing at which ore tenus evidence was presented, the trial court concluded that Weinrib was entitled “so much of the § 40-4-2 ‘commissions’ as is necessary to fund his office in the manner that he, as Tax Assessor, determines is necessary to timely and conscientiously satisfy the duties imposed upon him by Alabama law....” The trial court then prohibited the County from reducing Weinrib’s budget from $892,000, thus implicitly finding that the County needed to budget at least $892,000 for the tax assessor’s office in order for the County to be in compliance with § 40-6A-5. Because the trial court made that finding after hearing ore tenus evidence, that finding is entitled to a presumption of correctness, and we will not disturb it “unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.”
 
 American Petroleum Equip. & Constr., Inc. v. Fancher,
 
 708 So.2d 129, 132 (Ala.1997).
 

 At the evidentiary hearing held on August 5, Weinrib was asked by his attorney if he could perform the duties of his office in a proper and efficient manner with the funding then in place, and he replied, “[a]bsolutely not.” Weinrib specifically identified two statutory duties he claimed he would be unable to perform if the re
 
 *514
 
 duction to his budget and workforce was not reversed:
 

 “Q: Now, Mr. Weinrib, can you tell the court what statutory duties you have that are required to be performed between now and October 1?
 

 “A: Well, sure. We have coming up the abstract, which the abstract is required by [§ 40-7-35, Ala.Code 1975,] that we provide in triplicate form to the State Revenue, State Finance and Tax Collector so that the Tax Collector can begin officially making tax collection payments.
 

 “Q: What is the abstract?
 

 “A: The abstract contains detailed information broken down by tax district for state, county, each municipality with millage, each school board that receives property tax, the summary of assessment values in each tax district as well as the exemptions amounts and then the bottom line net taxes assessed due. And we are required by law to provide that to the Collector.
 

 “Q: When are you required to provide that abstract?
 

 “A: We are required to provide it — I think it’s either the second Monday or the second Tuesday in August. We’re required to provide it this month.
 

 “Q: With your present staffing and funding, will you be able to complete that obligation?
 

 “A: No, sir.
 

 “Q: Is [the abstract requirement] provided by [§ ] 40-7-35, the Code of Alabama?
 

 “A: Yes, sir.
 

 “Q: What other functions are you required to perform between now and October 1?
 

 “A: We are required to provide affidavits. We call them Act 48 cards that are homestead exemption re-verification cards. We have over 41,000 homestead residents who by virtue of age and/or income or total and permanent disability, have applied and received a homestead exemption that gives them an additional break off of their property taxes. And we are required by law to provide them an affidavit to reverify that they remain qualified. Obviously, when you have 41,000, that’s a lot to do. It takes preparatory work to send them out, because they have to be reaffirmed starting either October 1, then we run it through December 31st. We have to do a trial run of the mailing, which is typically done at the beginning of September, followed by the actual printing with the assistance of [information technology support] by the middle of September. And anyway, the production of that has now been affected adversely.
 

 “Q: Let me show you Plaintiffs Exhibit 13.
 

 “A: Yes, sir. It is an example of an Act 48 card from the 2009 tax year which we sent out last fall. We mailed cards like this out at the end of September of 2008 so that people received them by October 1, and they would be due by December 31st.
 

 “Q: To verify?
 

 “A: To reverify their continued eligibility of this homestead exemption.
 

 
 *515
 
 “Q: If that’s not accomplished, are they able to receive the homestead exemption?
 

 “A: It’s made more difficult. It cannot be done in a timely manner.
 

 “Q: Are there any other functions that you have to perform before October 1 other than your normal daily duties?
 

 “A: Those are two of the most critical ones.”
 

 However, on cross-examination, the County elicited testimony from Weinrib indicating that, in fact, the County’s actions reducing his budget and workforce would not impede him from completing these two tasks by the required deadlines:
 

 “Q: So in what way are you saying that the County specifically ran afoul of [§ 40-6A-5] in your complaint?
 

 “A: I am saying that they ran afoul with that section because they deprived my office of conveniences.
 

 “Q: What conveniences were those?
 

 “A: Conveniences in personnel. As far as the conveniences, the County has knocked out my ability to complete the 2009 abstract. They have knocked out my office’s ability to—
 

 “Q: Let me stop you. You said conveniences. What conveniences did the County knock out?
 

 “A: They knocked out the assistance to my office in the form of [information technology] support that specifically helps my office to be able to efficiently get the abstract done as well as the preparation of the Act 48 cards.
 

 “Q: When you say convenience, that did not — that doesn’t hamper your office from the ability to complete it, does it?
 

 “A: It does hinder. The ability to — we are unable to get the 2009 abstract done.
 

 “Q: How are you unable to do that? You said this was due — didn’t you mention August?
 

 “A: Right.
 

 “Q: August what? You said the second week in August, right?
 

 “A: Right. Next week.
 

 “Q: Second week in August. These [10] folks were placed on administrative leave as of this week?
 

 “A: As of Saturday.
 

 “Q: So you’re not saying that your office just got started working on this this week, are you?
 

 “A: No.
 

 [[Image here]]
 

 “Q: All right. Now, my question to you is, specifically, what has happened in your loss of staff for one week that’s going to prevent this report of requirement from going forward? Tell us specifically, this person is responsible for doing this and they’re not here. Tell me what critical role these folks play that is now going to be lacking in this one week that will prevent you from getting this out.
 

 “A: The assessment staff is not — does not prepare the abstract report, but my office does. Other people in my office do.
 

 “Q: I’m sorry. You said the assessment portion of your office doesn’t prepare this?
 

 “A: Correct.
 

 “Q: And the assessment portion are those individuals that were placed on administrative leave; is that correct?
 

 “A: That is correct.
 

 
 *516
 
 “Q: So then, getting back to my question where I asked you what roles did these individuals that were placed on administrative leave play in your completing this project, your answer would be no?
 

 “A: Correct.
 

 “Q: Now, you mentioned another statutory duty that you were unable to complete as a result of this reduction in force. That was the blue cards; is that right?
 

 “A: The Act 48 cards.
 

 [[Image here]]
 

 “Q: This is performed by what division of your staff?
 

 “A: My assessment staff.
 

 “Q: And that is due to be completed by December 81 st; is that correct?
 

 “A: Yes, sir.
 

 “Q: And you mentioned about [the] fiscal year. When does the fiscal year begin for the County?
 

 “A: October 1.
 

 [[Image here]]
 

 “Q: Was it your understanding that the reason for this reduction was because the County was unable to meet payroll during this fiscal year?
 

 “A: That is my understanding, yes, sir.
 

 “Q: So it is uncertain as to the status of the budget in the next budgeting cycle based on the dilemma that we are facing with the occupational tax; is that correct?
 

 “A: That is correct.
 

 “Q: But certainly, the basis for this reduction was due to the inability to make payroll during this fiscal year?
 

 “A: Correct.
 

 “Q: And the fiscal year begins in October?
 

 “A: Correct.
 

 “Q: So as to the status of your staffing after October 1st, you could be fully reinstated or partially. You don’t know, do you?
 

 “A: We don’t know.
 

 “Q: But you do know for sure that the next deadline that you have a statutory responsibility to complete is December 31st; right?
 

 “A: Correct.
 

 [[Image here]]
 

 “Q: You started off with 16 folks [in the assessment division]; right?
 

 “A: Right.
 

 “Q: All right. You had 10 of those people that were placed on administrative leave; right?
 

 “A: Right.
 

 “Q: And it's your understanding that they were placed on administrative leave because of the situation with the budget and the inability to pay those folks during this fiscal year; is that correct?
 

 “A: Yes.
 

 [[Image here]]
 

 “Q: So it is not your understanding that this is a permanent situation, is it?
 

 “A: It’s not — that’s my understanding it’s not a permanent situation, but it can be.
 

 “Q: Therefore, you cannot testify with certainty that your office will be in this same condition after October 1st, can you?
 

 “A: I can’t.
 

 “Q: All right. And it’s your testimony that you cannot complete your task that you have to complete by December 31st with the level of staffing that you have presently; is that correct?
 

 
 *517
 
 “A: Correct.
 

 “Q: But since you don’t know what level of staffing you will have come December 31st, you can’t say with certainty that you can’t complete that task in December?
 

 “A: As things stand now, we cannot complete that task. On December 31st, I cannot say. And also, on October 1, I won’t be the Tax Assessor anyway. It will be someone else.
 

 “Q: So it is uncertain at the time whether the task on December 31st can be completed; is that right?
 

 “A: It’s uncertain.”
 

 Reviewing Weinrib’s testimony in its entirety, we cannot agree that it supports the finding that a reduction to his $892,000 budget for the 2008-2009 fiscal year or the concomitant reduction to his staff would make it impossible for him to properly and efficiently complete his duties, thus placing the County in violation of § 40-6A-5. It will no doubt make it a more difficult task for Weinrib and his successor, but there is no evidence that would indicate that the task is overly difficult or impossible. We therefore decline to affirm the trial court’s judgment on the basis that the ordered reductions would violate § 40-6A-5.
 

 IV.
 

 The trial court held that Weinrib was entitled to receive certain commissions by virtue of § 40-4-2. Because those commissions exceeded the amount originally budgeted by the County for the tax assessor’s office for fiscal year 2008-2009, the trial court prohibited the County from reducing that budgeted amount either by directly reducing the funds made available to the tax assessor’s office or by reducing the number of hours the employees in the tax assessor’s office were allowed to work. However, because the judgment of the trial court was based on an erroneous interpretation of § 40-4-2 and because Weinrib is not, in fact, entitled to any commissions under that statute, the judgment of the trial court is hereby reversed and the cause remanded for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 COBB, C.J., and LYONS, SMITH, PARKER, and SHAW, JJ., concur.
 

 WOODALL, BOLIN, and MURDOCK, JJ., recuse themselves.
 

 [1]
 

 . This Court subsequently affirmed the trial court's judgment. See
 
 Jefferson County Commission v. Edwards,
 
 32 So.3d 572 (Ala.2009).
 

 [2]
 

 . The tax assessor’s office consists of two divisions — the Mapping and Reappraisal Division and the Assessment Division. However, because the Mapping and Reappraisal Division is funded by the State, its budget and personnel were not affected by the County's cost-cutting measures.
 

 [3]
 

 . Weinrib and the County have both indicated that Weinrib's budget was originally set at $892,980, not $892,000 as stated by the trial court. There is no explanation given for the discrepancy.
 

 [4]
 

 . The County also argues that the courts have no power to entertain Weinrib's challenge to its action reducing his budget. In support of this argument, the County quotes
 
 O’Rear v. Sartain,
 
 193 Ala. 275, 288, 69 So. 554, 558 (1915):
 

 “A court of equity, at the suit of a taxpayer, may restrain by injunction the misappropriation of county funds by county officials: but no power exists in a court of equity to compel county commissioners in the exercise of their discretion in the conduct of the county’s business. When a court of equity undertakes to review the action of boards of revenue or courts of county commissioners, a question of jurisdiction is presented; and unless the jurisdictional facts are alleged, and the charge thereon is made of fraud, corruption, or unfair dealing, jurisdiction of the subject-matter is not acquired.”
 

 However, although courts generally do lack jurisdiction to review the discretionary actions of county commissioners, the County fails to recognize that
 
 O'Rear
 
 is inapplicable in this case because Weinrib is alleging that he was entitled to the claimed commissions by statute and that the County had no discretion to withhold those commissions from him.
 

 [5]
 

 . In § 40-6A-2, Ala.Code 1975, the legislature set forth a statewide minimum salary schedule for certain county officials, including tax assessors. However, that schedule became effective in each county only if the schedule was approved by the governing body of the county. See
 
 Hamilton v. Walker County,
 
 521 So.2d 34, 35 (Ala.Civ.App.1987) (“There can be no doubt that the plain and natural meaning of the above-quoted language is that county approval is a prerequisite to the application of § 40-6A-2's amended compensation schedule to a county's tax officials.”). It is not clear from the record how many of this State’s counties, if any, still have tax assessors who are compensated on a commission basis under the fee system.