MOORE, Judge.
The prior judgment of this court has been reversed by the Alabama Supreme Court, and the cause has been remanded for further proceedings in this court. See Ex parte Town of Summerdale, 252 So.3d 111 (Ala.2016). In compliance with the supreme court's opinion in Ex parte Town of Summerdale, we proceed to address the remaining issues presented on appeal.
Procedural History
The East Central Baldwin County Water, Sewer and Fire Protection Authority ("ECBC") appealed from a partial summary judgment entered by the Baldwin Circuit Court ("the trial court") in favor of the Town of Summerdale ("Summerdale"), the City of Robertsdale ("Robertsdale"), and Baldwin County Sewer Services ("BCSS") and from the denial of its summary-judgment motion. In East Central Baldwin County Water, Sewer & Fire Protection Authority v. Town of Summerdale, 252 So.3d 98 (Ala.Civ.App.2015), this court set forth the pertinent procedural history of this case:
"On October 20, 2009, Summerdale filed a complaint seeking[, among other things,] a judgment against ECBC and the Baldwin County Commission ('the county commission') declaring 'that the amendment to the articles of incorporation of ECBC, which was approved on or about February 19, 2002, and filed for *127 record in the Office of the Judge of Probate of Baldwin County, Alabama, at Instrument No. 650808, on March 28, 2002, is null and void and of no effect'; that the 'amendment to [ECBC's] articles of incorporation recorded on October 9, 2008, in the Office of the Judge of Probate of Baldwin County, Alabama, at Instrument No. 1143281, which authorized ECBC to provide sewer service in its service area' is 'null and void and of no effect'; ... and that ECBC does not have any authority regarding sewer services in its service area. Robertsdale and BCSS filed complaints containing the same allegations....
"All parties moved for a summary judgment on the claim regarding the validity of the 2002 amendment to ECBC's articles of incorporation ('the 2002 amendment'), which expanded the geographical service area of ECBC, and the claim regarding the 2008 amendment to ECBC's articles of incorporation ('the 2008 amendment'), which expanded the services that ECBC had authority over in its service area to include sewer services.... Robertsdale, Summerdale, and BCSS asserted (1) that the 2002 amendment was invalid because other public-water systems were adequate to provide water services to the portion of ECBC's service area that was added pursuant to that amendment ('the ECBC 2002 expanded service area') and (2) that the 2008 amendment was invalid because other public-sewer systems were adequate to provide sewer services in ECBC's service area.... On June 22, 2012, the trial court entered an order stating:
" 'Based on the application made by Defendant, ECBC, to the [county commission] containing geographic areas in Robertsdale, Alabama community that were already being served by the City of Robertsdale, the application contained incorrect information. The Court is not in a position to "carve out" corrections to the application and approval. Therefore, the [county commission's] approval of ECBC's application should be set aside and by this Order is deemed set aside.'
"After a motion to certify that order as final pursuant to Rule 54(b), Ala. R. Civ. P., and a motion to reconsider was filed by ECBC, the trial court entered another order on September 24, 2012, [denying the motion to reconsider and certifying the judgment as final, pursuant to Rule 54(b) ].
"On October 31, 2012, ECBC filed its notice of appeal to this court. This court transferred the appeal to the supreme court for lack of appellate jurisdiction; that court transferred the appeal back to this court, pursuant to § 12-2-7, Ala.Code 1975."[1]
252 So.3d at 102.[2]
This court set aside the trial court's Rule 54(b), Ala. R. Civ. P., certification, and, subsequently, the trial court "entered a judgment clarifying that it had intended for its summary judgment to apply equally to the controversy concerning the 2008 amendment." 252 So.3d at 102. ECBC timely appealed from that amended judgment. 252 So.3d at 109. On appeal, this court held that "Robertsdale, Summerdale, *128 and BCSS lacked standing to seek redress with regard to the approval of the 2002 amendment and the 2008 amendment[, and, therefore,] the trial court lacked subject-matter jurisdiction over those claims and had no alternative but to dismiss the complaints as to those claims." 252 So.3d at 109. We further concluded that the partial summary judgment entered in favor of Robertsdale, Summerdale, and BCSS was void and that a void judgment would not support an appeal. 252 So.3d at ----. This court dismissed the appeal with instructions to the trial court to set aside its void judgment and to dismiss the complaints to the extent that they challenged the 2002 amendment and the 2008 amendment. 252 So.3d at ----.
Robertsdale, Summerdale, and BCSS subsequently petitioned the Alabama Supreme Court for a writ of certiorari. See Ex parte Town of Summerdale, supra. The supreme court granted certiorari review except with regard to Summerdale's challenge to the 2008 amendment. The supreme court determined that this court had erred in determining that Robertsdale, Summerdale, and BCSS lacked standing to challenge the 2002 amendment and in determining that Robertsdale and BCSS lacked standing to challenge the 2008 amendment. Ex parte Town of Summerdale, 252 So.3d at ----. The supreme court reversed this court's judgment and remanded the cause for further proceedings.
Stipulated Facts [3]
As set forth in our previous opinion, the parties stipulated to the following facts:
" 'ECBC is an Authority organized under Article 1, Chapter 88, Title 11, Code of Ala. (1975), as amended.
" '....
" '... On or about February 4, 2002, the Board of Directors of ECBC ... adopted a resolution proposing [an] amendment to [ECBC's] Certificate of Incorporation for the purpose of enlarging ECBC's service area to include certain additional territory for the purpose of providing water and fire protection services.
" '... On or about February 5, 2002, the Board of Directors of ECBC filed a written application with [the county commission] describing the proposed amendment and requesting that [the county commission] adopt a resolution declaring that it had reviewed the contents of the application, and after review, had found and determined as a matter of law that the statements contained in the application were true.
" '... On or about February 19, 2002, [the county commission] ... adopted a resolution in which it declared that it had reviewed the contents of said application, and after the review, had found and determined as a matter of law, that the statements contained in said application were true.
" '... On or about March 28, 2002, an Amendment to the Certificate of Incorporation of ECBC was recorded in the Office of the Judge of Probate of Baldwin County, Alabama, Instrument Number: 650808. Said Amendment added additional territory to ECBC's service area.
" 'On or about June 10, 2008, the Board of Directors of ECBC adopted a resolution proposing another amendment to its Certificate of Incorporation to make provision for the operation of a sewer system and requested *129 that its name be changed to East Central Baldwin County Water, Sewer and Fire Protection Authority. The request was for all of the lands in its service area except for those areas already being serviced by BCSS....
" '... On or about June 18, 2008, the Board of Directors of ECBC filed a written application with [the county commission] which described the proposed amendment to the Certificate of Incorporation and requested that [the county commission] adopt a resolution declaring that it had reviewed the contents of the application and, after review, had found and determined as a matter of law that the statements contained in the application were true.
" '... The application states that "there is no public sewer system adequate to serve the territory in which it is proposed that [ECBC] will render sewer service."
" '... [The county commission] approved the application by adopting a resolution on about September 16, 2008.' "
252 So.3d at 114.
Discussion
I.
ECBC argues that the county commission's actions in approving the 2002 amendment and the 2008 amendment are not subject to judicial review unless those actions were the result of "fraud, corruption, or unfair dealings" and that, if the amendments are subject to judicial review, the county commission's actions are presumed to be valid unless they were arbitrary and capricious.
"[T]he action of a county governing body in the exercise of discretionary powers vested in it is not subject to judicial review except for fraud, corruption or unfair dealing." Bentley v. County Comm'n for Russell Cty., 264 Ala. 106, 109, 84 So.2d 490, 493 (1955). Furthermore, the standard of review of a local government's exercise of its discretionary powers is whether its actions were "arbitrary and capricious." ECO Preservation Servs., LLC v. Jefferson Cty. Comm'n, 933 So.2d 1067, 1071 (Ala.2006). As noted by this court in Jefferson County v. Weinrib, 36 So.3d 508 (Ala.2009), however, although review of discretionary actions of county commissions is limited, when the actions are not discretionary, the limited jurisdiction to review those actions is not applicable. 36 So.3d at 511 n. 4. In Weinrib, this court noted: "[A]lthough courts generally do lack jurisdiction to review the discretionary actions of county commissioners, [that legal premise was] inapplicable [when it was alleged that the statute at issue entitled the plaintiff to certain claimed commissions] and that the County had no discretion to withhold those commissions...." Id. at 511 n. 4.
Similarly, in the present case, as in Weinrib, Robertsdale, Summerdale, and BCSS have argued that, because the facts set forth in ECBC's applications were not true, the county commission lacked the discretion to approve the applications. Therefore, if the statute at issue in this case is mandatory and not discretionary, the trial court's and this court's review of the county commission's decisions are not limited under the holdings of Bentley and ECO Preservation Services. We note that Ala.Code 1975, § 11-88-5(d), clearly states that "[i]f the [commission] finds and determines that the statements in [the application for an amendment] are not true, [the commission] shall deny the application." (Emphasis added.) "[G]enerally the word 'shall' in a statute is used in a mandatory sense[;] ... 'shall' may be construed as permissive where from the circumstances *130 it is obvious that the Legislature intended it so or where the validity of the statute is placed in jeopardy." Prince v. Hunter, 388 So.2d 546, 548 (Ala.1980). Compare Prince with Ex parte Mobile Cty. Bd. of Sch. Comm'rs, 61 So.3d 292, 294 (Ala.Civ.App.2010) ("Ordinarily, the use of the word 'may' indicates a discretionary or permissive act, rather than a mandatory act."). In the present case, neither of the two exceptions to the general construction of the word "shall" is applicable. The first sentence of § 11-88-5(a) specifically states that a "certificate of incorporation of any authority incorporated under the provisions of this article may ... be amended in the manner provided in this section." (Emphasis added.) Therefore, it appears that the legislature intended that the county commission could not approve an amendment to ECBC's certificate of incorporation if all the requirements in § 11-88-5 were not fulfilled. Furthermore, there is no indication that the validity of § 11-88-5 is in jeopardy. Accordingly, we conclude that the county commission's actions in approving the 2002 amendment and the 2008 amendment were not based on an act of discretion; instead, the county commission had no choice but to deny the applications if the facts in the applications were not true. Because the county commission's actions were not discretionary, we conclude that ECBC's arguments-that the 2002 amendment and the 2008 amendment are not subject to judicial review unless those actions were the result of "fraud, corruption, or unfair dealings" and that, if the amendments are subject to judicial review, the county commission's actions are presumed to be valid unless they were arbitrary and capricious-are without merit. The trial court's and this court's review of the county commission's actions are not contingent upon a showing of "fraud, corruption, or unfair dealings" and are not subject to the limited "arbitrary and capricious" standard of review.
II.
ECBC also argues that Summerdale and Robertsdale are estopped from challenging the validity of the 2002 amendment. " '[A]lthough the doctrine of estoppel is rarely applied against a municipal corporation, it may be applied in a proper case when justice and fair play demand it and where there has been a misrepresentation or concealment of material fact.' " Peterson v. City of Abbeville, 1 So.3d 38, 44 (Ala.2008) (quoting City of Foley v. McLeod, 709 So.2d 471, 474 (Ala.1998) ). In City of Foley, our supreme court held that the City of Foley was estopped from enforcing a zoning ordinance against the property owners when the property owners had stated in their response to interrogatories that they had "informed the City's building inspector of their plan ... and that he expressed no objection to their plan" and the City presented no evidence to refute that statement. 709 So.2d at 474.
In the present case, Summerdale's mayor testified that representatives from ECBC had falsely represented that if Summerdale ever annexed portions of the ECBC 2002 expanded service area into the municipality, Summerdale would have the option to purchase ECBC's system or to lay water lines parallel to ECBC's lines. Robertsdale's mayor testified that ECBC's engineer had told him that ECBC was considering laying water lines east of Robertsdale but that he had never been informed of any specific plans. We conclude that the present case is distinguishable from City of Foley because, in the present case, the evidence indicates that Robertsdale was not informed of ECBC's specific plans with regard to the 2002 amendment and also that ECBC's representative actually misrepresented the facts regarding *131 the application to Summerdale. Under those circumstances, we cannot conclude that "justice and fair play" demand that estoppel be applied against Summerdale and Robertsdale.
III.
Finally, ECBC argues that § 11-88-5, Ala.Code 1975, is ambiguous with regard to the meaning of the term "adequate" and that the trial court's construction of that term was erroneous. ECBC specifically argues that the term "adequate" should be liberally construed because, it says, § 11-88-5 was enacted to benefit the public.
"Fundamental to statutory interpretation is the rule that the courts are to ascertain and give effect to the intent of the legislature in enacting the statute. John Deere Co. v. Gamble, 523 So.2d 95 (Ala.1988). In construing a statute, this Court should, when possible, determine the intent of the legislature from the language of the statute itself. Pace v. Armstrong World Industries, Inc., 578 So.2d 281 (Ala.1991). 'We may also look to the reason and necessity for the statute and the purpose sought to be obtained by enacting the statute.' Id. at 283 (citation omitted). Thus, the legislative intent 'may be gleaned from considering the language used, the reason and necessity for the act, and the goals sought to be accomplished.' McGuire Oil Co. v. Mapco, Inc., 612 So.2d 417, 422 (Ala.1992) (citation omitted); Ex parte Sanders, 612 So.2d 1199 (Ala.1993)."
Junkins v. Glencoe Volunteer Fire Dep't, 685 So.2d 769, 771 (Ala.Civ.App.1996).
Section 11-88-2, Ala.Code 1975, provides that Article 1 of Chapter 88 of Subtitle 3 of Title 11 of the Alabama Code 1975, of which § 11-88-5 is a part, "is intended to aid the state in the execution of its duties by providing appropriate and independent instrumentalities of the state with full and adequate powers to fulfill their functions." Based on § 11-88-2, we conclude that the Article 1 was not enacted for the purpose of benefiting the public but, instead, to aid the state in fulfilling its functions. Therefore, this court must construe the § 11-88-5 for the purpose of accomplishing the goal of aiding the state.
The specific statutory language at issue is in § 11-88-5(c)(2) ; that subsection provides, in pertinent part, that an application for an amendment to articles of incorporation must
"[s]tate, in the event that it is proposed to add any new territory to the service area of the authority, that there is no public water system adequate to serve any new territory in which it is proposed that the authority will render water service, that there is no public sewer system adequate to serve any new territory in which it is proposed that the authority will render sewer service...."
(Emphasis added.)
"Adequate" is defined as "sufficient for a specific requirement," "barely sufficient or satisfactory," and "lawfully and reasonably sufficient." Merriam-Webster's Collegiate Dictionary 15 (11th ed.2003). According to Robertsdale, Summerdale, and BCSS, there were public water systems and public sewer systems that were capable of providing services in the 2002 ECBC expanded service area and that were "adequate" for the purposes of § 11-88-5, despite the fact that Robertsdale and Summerdale had chosen not to offer services in that entire area. Specifically, we note that it was undisputed that Robertsdale had water lines that were located in the ECBC 2002 expanded service area before the 2002 amendment. In fact, Robertsdale had had over 12 customers in one section of the ECBC 2002 expanded service area since 1994 or 1995, over 6 customers in another section since before *132 1994, approximately 10 customers in another section, and over 20 customers in yet another section. The evidence further indicated that, " '[p]rior to the 2002 expansion request by ECBC, ... Robertsdale['s water system] was ready and adequate to provide water service to the [ECBC 2002 expanded service area]' " and that, before the 2008 amendment, Robertsdale's " 'sewer capacity and service capability ... was ready and adequate to provide sewer service to the area encompassed by ECBC.' " East Central Baldwin Cty. Water, Sewer & Fire Prot. Auth., 252 So.3d at 116. In fact, the ECBC 2002 expanded service area included Robertsdale's existing sewer-treatment plant. The evidence also indicated that, "in July 2003, ECBC had obtained a 'Rural Utility Service Loan' from the United States Department of Agriculture in the amount of $3,037,500, and a grant in the amount of $2,362,500 for part of the 2002 expansion." East Central Baldwin Cty. Water, Sewer & Fire Prot. Auth., 252 So.3d at 117. As a result of obtaining that loan, ECBC has a protected service area, and all other service providers are prohibited from laying lines parallel to those laid by ECBC in that area. East Central Baldwin Cty. Water, Sewer & Fire Prot. Auth., 252 So.3d at 117.
ECBC's position, however, is that, because Robertsdale and Summerdale were not, in fact, providing water and sewer services in that area, those services were not "adequate" for purposes of § 11-88-5. The evidence indicated that Robertsdale and Summerdale had not provided water services to the entire ECBC 2002 expanded service area because it was not economically feasible and that Robertsdale had not provided sewer services there for the same reason.
We note that the placement of the term "adequate" immediately following "public water system" and "public sewer system," respectively, indicates that the term is being used to describe the systems, not the decision of the municipality on whether to provide the service. Furthermore, as noted in § 11-88-2, the provisions in the article of which § 11-88-5 is a part were intended to aid the state; therefore, we should construe the term "adequate" from the perspective of the government. From the perspective of the governments involved in this case, they were not in need of aid to provide water or sewer services because Robertsdale's and Summerdale's water systems and Robertsdale's and BCSS's sewer systems were capable of providing those respective services to the ECBC 2002 expanded service area. Moreover, we note that Robertsdale was already providing water services in a portion of the ECBC 2002 expanded service area, and Robertsdale's existing sewer-treatment plant was located within that area. The purpose of the statute at issue in this case-to aid the government in providing services-would not be advanced and, as is evinced by what happened in this case, would actually thwart the government's ability to provide services if we were to adopt ECBC's construction of the term "adequate."
Based on the foregoing, we construe the meaning of the term "adequate" as used § 11-88-5 to be "capable of providing services," as argued by Robertsdale, Summerdale, and BCSS. Because, in the present case, ECBC's 2002 application represented that there was "no public water system adequate to serve any new territory in which it is proposed that the authority will render water service," and because that representation has been proven to be false, we conclude that the 2002 amendment was due to be set aside. Similarly, because, in the present case, ECBC's 2008 application represented that there *133 was "no public sewer system adequate to serve any new territory in which it is proposed that the authority will render sewer service," and because that representation has been proven to be false, we conclude that the 2008 amendment was due to be set aside.
Conclusion
Having rejected all of ECBC's arguments on appeal, we affirm the trial court's judgment.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.

In this opinion, we use the same defined terms and designations we used in East Central Baldwin County Water, Sewer & Fire Protection Authority.

See this court's opinion in East Central Baldwin County Water, Sewer & Fire Protection Authority, 252 So.3d at ----, for a more detailed recitation of the procedural history of this case at the time that opinion was issued.

For a more detailed recitation of the facts in this case, see this court's opinion in East Central Baldwin County Water, Sewer & Fire Protection Authority, 252 So.3d at ----.