EMBRY, Justice.
This is a suit by eight citizens of Macon County against Macon County and its Commissioners, the Macon County Hospital Association and its Directors, and the City of Tuskegee.
The crux of the action is an attempt by the citizens to prevent liquidation of Macon County Hospital by the Board of Directors of the Macon Hospital Association, and to require that the facility be reopened. In the alternative, the citizens seek abolition of a sales tax, the proceeds from which, they contend, should be used for hospital purposes. In addition relief is sought by way of a judgment effecting reversion of title to the grantors of a parcel of property jointly owned by Macon County and the City of Tuskegee, and on which the hospital stands, on the basis that failure to use the site for hospital purposes violates the terms of the instrument of grant.
The court denied all relief sought by plaintiffs, ordered dissolution of the Macon County Hospital Association, and appointed a receiver to liquidate the assets of the hospital, pursuant to defendants’ counterclaim for such relief.
The factual background of this litigation was summarized in the trial court’s finding as follows:
“Pursuant to the provisions of Act 211 of the Regular Session of the Legislature of the State of Alabama 1945, the Macon County Hospital Association was duly incorporated on January 7, 1947, for the purpose of providing hospitalization facilities for the citizens of Macon County, Alabama. The Association was run by a Board of Directors appointed by the local governmental authorities giving financial support to the association. In this case, Macon County and The City of Tuskegee participated.
“On February 25, 1948, H. A. Vaughn and his wife, Mary H. Vaughn, executed a deed in words as follows:
“ ‘We, Mary H. Vaughn and her husband, H. A. Vaughn, for and in consideration of the sum of One Dollar ($1.00) to us in hand paid by The City of Tuskegee, Alabama, and Macon County, Alabama, do grant, bargain, sell and convey unto the said City of Tuskegee and Macon County the following described property, to wit:’
(Described 7.5 acres of land and these words follow).
“ ‘This is a deed of gift and the above described property shall be held jointly *1139 by The City of Tuskegee and Macon County, forever as a hospital site and for such other purposes as may be determined by the City Council and County Board of Revenue to be to the best interest of the citizens of Tuskegee and Macon County.’
“ ‘To have and to hold unto the said City of Tuskegee and Macon County, their successors and assigns forever.’
“A hospital was built by the City and County on the aforesaid property and the hospital was in continuous service until June 21, 1979, when it was closed by the Association.
“The City of Tuskegee and Macon County contributed to the support and maintenance of the hospital until the year 1979 when the City of Tuskegee withdrew from making contributions as a result of a sales tax passed by the Legislature of the State at the regular 1969 session, Act 818. The County continued to make contributions up to the time of closure and continues to pay the receiver and for security.
“When the City withdrew its support, it conveyed to Macon County its undivided one-half interest in a portion of the 7.5 acre tract upon which the hospital building is actually located leaving the city as the joint owner of a portion of the land on the east and on the west of the hospital building site.
“The tax act, referred to above, provided for a sales tax of one percent on gross sales of all items in Macon County except vehicles and machines of certain kinds on which a tax of one-fourth of one percent of the sales price was levied.
“The tax provides:
“Section 9. Proceeds from the taxes herein levied shall be used for the purpose of acquiring, constructing, improving, enlarging, renovating, replacing, equipping, operating, maintaining and repairing public hospitals, public clinics, public health centers and related public health facilities in Macon County, whether any such hospital, clinic, center, or facility is owned by the County or by a public corporation heretofore or hereafter organized or created pursuant to authorization or determination of the governing body of Macon County, including the pledge of the taxes herein levied and the proceeds arising therefrom by the governing body of Macon County to the payment of any bonds, warrants, or other obligations or evidences of indebtedness of the Court [sic, County] which may hereafter be issued under authority of any law now existing or hereafter enacted, for any one or more of the aforesaid purposes. Any pledge of such taxes and the proceeds arising therefrom shall constitute a contract and this act shall not be repealed, altered or amended in such a way as to impair the obligation of such contract. Subject to any such pledge or pledges which shall be a prior lien and claim on said tax and the proceeds therefrom, any part of such proceeds not needed in the judgment of the governing body of the County for the aforesaid purposes may be expended for such purposes as in the judgment of the governing body are meet and proper.
“Because of good times and inflation the sales tax has generated three million dollars with $144,000 yearly returned in 1970, $355,000 in 1979, and $36,000 during the month of August 1980.
“From the sales tax, expenditures by the County to Macon County Hospital consisted of $388,223.54 or 13% for direct appropriation; $364,181.89 or 12% for renovations since 1973 and $39,338.05 or 1.3% for indigent care at the hospital.
“Macon County Health Center received $710,290.03 or 23.7%; Solid Waste Contract received $407,227.45 or 13.56%.
“Macon County paid John Andrews Hospital $113,766.85 or 3.7% for the care of indigents. When an indigent was hospitalized, a certified statement for the care was presented and is part of this record.
“The balance of the tax money has been expended through the general fund of the County and other public purposes *1140 determined by the County Commissioners. Some of these expenditures from the general fund were for health purposes but some were obviously not for health purposes.
“Financial and other difficulties beset the hospital during 1979. Doctors on the hospital staff transferred their patients to other hospitals and the last patient was treated June 9, 1979. All doctors had resigned by June 11, 1979. With no doctors, no patients, and no money, the Hospital Board voted to close the hospital on June 21, 1979. Employees were released on June 28, 1979.”
Although numerous issues were raised by, and decided against, the citizens below, they argue only two points in their briefs on appeal. This court will only consider those issues properly raised and argued in the parties’ briefs. Adrian v. Lockridge, 285 Ala. 222, 231 So.2d 95 (1970).
The first issue presented for review is whether the trial court erred in ruling that the property deeded by the Vaughns to Macon County and the City of Tuskegee can be used for a public purpose other than a hospital site, in light of the provision in the conveyance that “the above described property shall be held jointly by The City of Tuskegee and Macon County, forever as a hospital site and for such other purposes as may be determined by the City Council and County Board of Revenue to be to the best interest of the citizens of Tuskegee and Macon County.”
Before addressing the merits of this issue, we will briefly allude to defendants’ contention that the citizens have no standing to seek reversion of title to the property to the Vaughns, or their heirs, based on an alleged violation of a condition attached to the grant. This question was raised below by defendants’ motion to dismiss, which the trial court denied.
We agree with defendants that the eitizens do not have an interest in the subject property such as entitles them to seek a reversion of title to the property for failure of a condition subsequent. As this court stated in Watson v. Mills, 275 Ala. 176, 153 So.2d 612 (1963):
“When a deed is inter partes, a stranger thereto cannot sue upon it. Douglass and Easton v. Branch Bank of Mobile, 19 Ala. 659. Stated in a more general way, the rule is that one not a party to, or in privity with a contract, cannot sue for its breach. Land Title Guaranty Co. v. Lynchburg Foundry Co., 16 Ala.App. 568, 80 So. 142; Alabama City G. and A. Ry. Co. v. Kyle, 202 Ala. 552, 81 So. 54; and a stranger to a contract can take no advantage of a breach of any condition of the contract. Foster v. Sykes, 23 Ala. 796.
Because we conclude the citizens have no standing regarding this aspect of the case, we do not deem it necessary to consider the merits of their arguments on this issue.
Turning to the second issue presented, the citizens contend the trial court erred in ruling that sales taxes collected pursuant to Act 818 of the 1969 Legislature may be used for any public purpose in the judgment of the governing body of Macon County. The conclusion of the trial court in this regard was:
“. . . The use of the funds is a judgment call by the executive and legislative body of the County and not subject to review by the judiciary except where audits ■show illegal expenditures.
“For the most part the proceeds have been used for the designated purpose and all the funds have been used for legal purposes.
“The proceeds may be used for any public purpose by the County if in the judgment of the governing body it is not needed for the stated purposes related to hospitals and health care of the citizens.”
Clearly, Act 818 grants discretionary power to the Board of Commissioners in expending proceeds from the sales tax, albeit within the guidelines of the act. “It has been held many times that the action of a county governing body, in the exercise of discretionary powers vested in it, is not subject to judicial review except for fraud, corruption or unfair dealings.” Taxpayers and Citizens of Lawrence County v. Law *1141 rence County, 273 Ala. 638, 143 So.2d 813 (1962). The citizens did not allege or present evidence of any of these exceptional circumstances; neither did the trial court find the Commissioners’ actions to be so tainted.
Accordingly, the judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
TORBERT, C. J., and FAULKNER, AL-MON and ADAMS, JJ., concur.