This case involves the authority of the Jefferson County Commission ("the Commission") to deny a permit that would allow a private company to install a sewer line along a county road and within a county right-of-way. That company, ECO Preservation Services, LLC ("ECO"), sought declaratory, injunctive, and mandamus relief to compel the Commission to issue the permit.[1] The Jefferson Circuit Court entered a summary judgment for the Commission. We affirm.
 I. Facts and Procedural History
ECO is an Alabama limited liability company that provides sanitary sewage-treatment and disposal services.[2] ECO operates a sewage-treatment facility in Tuscaloosa County; treated waste from that facility is discharged into Mud Creek in Bibb County. ECO serves customers primarily in Tuscaloosa County and has no customers in Jefferson County.
To facilitate its operations in Tuscaloosa County, ECO sought permission from the Commission to install a sewer line in a county right-of-way in Jefferson County. ECO's stated purpose in installing its line within the county right-of-way was to connect its current sewer system in Tuscaloosa County to a potential commercial customer *Page 1069 
in eastern Tuscaloosa County through a portion of Jefferson County contiguous with Tuscaloosa County.[3] ECO also contends that if the Commission allows it to install the sewer line in and along the county right-of-way, ECO could offer services to potential customers in western Jefferson County.
This Court has already decided one case involving ECO and the Commission. Jefferson County Comm'n v. ECO Preservation Servs.,LLC, 788 So.2d 121 (Ala. 2000) ("ECO I"). The instant case, however, involves different facts and different issues and produced a different result in the circuit court.
The events giving rise to ECO I began in 1997, when ECO applied for a permit seeking a perpendicular crossing to construct a sewer line under Kimbrell Cutoff Road in western Jefferson County. The Commission denied the permit, and ECO sued, seeking declaratory, injunctive, and mandamus relief. The Jefferson Circuit Court entered a partial summary judgment for ECO and ordered the Commission to issue the permit, finding that the Commission's decision to deny the crossing permit was arbitrary and capricious. The Commission appealed, and this Court affirmed.
In December 1999, while ECO I was pending in the circuit court, ECO applied for a second permit, proposing to run a sewer line parallel to Old Tuscaloosa Highway, in the county right-of-way, between Kimbrell Cutoff Road and the Tuscaloosa County line. This proposed line would travel 2,050 feet along the county right-of-way and involve an 8-inch "force main" sewer. It is this permit application that is at issue here.
The Commission refused to issue the second permit. On April 11, 2000, ECO moved to amend its then pending complaint to compel the Commission to issue the second permit. By that time, however, the Commission had already appealed the summary judgment in ECO I
to this Court. After conducting a hearing on the request for a preliminary injunction, the circuit court stayed the motion to amend pending resolution of ECO I. The circuit court eventually granted the motion to amend, although it is not clear when it did so.
This Court decided ECO I on August 18, 2000. The Commission subsequently issued ECO a permit for the perpendicular crossing of Kimbrell Cutoff Road. At the same time, however, the Commission denied ECO's request for the second permit — the request to use the county right-of-way parallel to Old Tuscaloosa Highway.
After we affirmed the partial summary judgment, the Jefferson Circuit Court, with Judge Jack Carl presiding,[4] held a status conference regarding the case on March 9, 2001. On April 11, 2001, the Commission moved for a summary judgment on all of ECO's claims regarding the denial of the second permit, and ECO countered with its own motion for a partial summary judgment. *Page 1070 
On June 2, 2001, Judge Carl entered an order denying ECO's summary-judgment motion but withheld judgment on the Commission's motion. In his order, Judge Carl gave ECO 14 days in which to submit evidence indicating "that the County Commission acted in an arbitrary and capricious manner when it denied [ECO's] request to install a sewer line along the County's right-of-way." The order also provided the Commission seven days to respond to ECO's submission of evidence. ECO, however, failed to offer any evidence.
On October 15, 2004, more than three years after ECO had been given an opportunity to provide evidence to support its claims, the circuit court, in an order issued by Judge Houston L. Brown,[5] dismissed the action for want of prosecution. On November 12, 2004, ECO moved to vacate the order of dismissal, and on November 23, 2004, the circuit court granted ECO's motion and the action resumed, now focused solely on whether the Commission had unlawfully denied the second permit. At that point, the circuit court scheduled a hearing for January 7, 2005, on the Commission's motion for a summary judgment, which had been pending since April 11, 2001.
On December 17, 2004, the Commission filed a motion for involuntary dismissal, asking the circuit court to set aside its ruling reinstating the action on the grounds that ECO had failed to comply with the court's order of June 7, 2001, giving ECO 14 days to submit evidence in support of its claims. The circuit court, however, held the hearing on the Commission's motion for a summary judgment on January 7, 2005, as scheduled. In an order issued on the same day, the circuit court continued the hearing on the Commission's motion for a summary judgment until February 11, 2005, and gave the parties until January 21, 2005, "to submit any additional authority in support of their respective positions." Following this order, the Commission once again moved for involuntary dismissal based on the delay in the case.[6]
Finally, on February 18, 2005, after the parties had presented oral arguments and submitted evidence, the circuit court entered a summary judgment for the Commission, concluding that the Commission had acted within its discretion in denying the permit. ECO appeals.
 II. Standard of Review A. Summary Judgment
A party is entitled to a summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Ala. R. Civ. P. 56(c)(3). This Court reviews a summary judgment de novo, subject to the caveat that it must review the record in the light most favorable to the nonmoving party and resolve any reasonable doubts against the moving party. University of South Alabama v.Progressive Ins. Co., 904 So.2d 1242, 1246 (Ala. 2004);Southeast Cancer Network, P.C. v. DCH Healthcare Authority,Inc., 869 So.2d 452, 456 (Ala. 2003). The moving party has the burden of making a prima facie showing that the movant is entitled to a summary judgment. American Gen. Life AccidentIns. Co. v. Underwood, 886 So.2d 807, 811 (Ala. 2004). If the movant satisfies this burden of production, the nonmovant then bears the burden of producing substantial evidence creating a genuine *Page 1071 
issue of material fact. 886 So.2d at 811. "`Substantial evidence' is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Hess v. Market Inv.Co., 917 So.2d 140, 142 (Ala. 2005) (quoting West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)).
 B. Discretionary Action by a County Commission
In this action, ECO contends that the Commission acted improperly in denying the second permit. To determine whether the summary judgment for the Commission was appropriate, we must first define the standard applicable to a court's review of a county commission's discretionary decision when, as here, the county commission acts to grant or to deny a permit to use a right-of-way. ECO argues that the relevant inquiry is whether the Commission's decision to deny the permit was "arbitrary or capricious."[7] We agree.
Our cases have consistently held that local governments may not arbitrarily exercise their discretionary powers, including the power to grant or to deny a permit to use a right-of-way. InMobile County v. City of Saraland, 501 So.2d 438 (Ala. 1987), we issued a writ of mandamus to compel a city council to grant such a permit to Mobile County. We based that decision on our conclusion that the city's denial of the permit was arbitrary and capricious. 501 So.2d at 440. A county commission is subject to the same standard. See Etowah County Comm'n v. Hayes,569 So.2d 397, 398 (Ala. 1990) (judicial review of county commission's decisions extends to "conduct so arbitrary or capricious as to contravene lawfully constituted authority"); Black v. PikeCounty Comm'n, 375 So.2d 255 (Ala. 1979) (analyzing denial of liquor license under arbitrary-or-capricious standard).[8]
Although our cases have not always used the words "arbitrary or capricious," we have consistently applied that standard in practice when reviewing a county's decision to grant or deny a license or permit.[9] *Page 1072 
 III. Analysis
In denying ECO's request for the permit, the Commission concluded, among other things, "[t]hat the Plaintiffs, ECO Preservations Services L.L.C. et al. have no clear legal right to use the right-of-way of Old Tuscaloosa Highway and further presented no evidence or argument at the hearing on their applications that they possessed any such right." Before the Commission and before the circuit court, ECO was given every opportunity to provide evidence indicating that the Commission acted improperly in denying its request for the second permit, including the opportunity to demonstrate that it has a legal right to the second permit under either Alabama law or the Commission's practices and procedures. ECO, however, has failed to offer any such evidence.
By statute, the Commission has general superintendence over the roads in Jefferson County, including rights-of-way. Section23-1-80, Ala. Code 1975, provides, in pertinent part:
 "The county commissions of the several counties of this state have general superintendence of the public roads, bridges and ferries within their respective counties so as to render travel over the same as safe and convenient as practicable. To this end, they have legislative and executive powers, except as limited in this chapter. They may establish, promulgate and enforce rules and regulations, make and enter into such contracts as may be necessary or as may be deemed necessary or advisable by such commissions to build, construct, make, improve and maintain a good system of public roads, bridges and ferries in their respective counties, and regulate the use thereof. . . ."
Our cases have held that this right of general superintendence includes the power to decide whether private entities may install sewer lines in county rights-of-way that run parallel to those rights-of-way. In Water Works Sewer Board of City ofBirmingham v. Shelby County, 624 So.2d 1047 (Ala. 1993), the Birmingham Water Works wanted to run a 12" water main along a county right-of-way in Shelby County to serve a subdivision in that county. When the Shelby County Commission did not grant it a permit, the Birmingham Water Works petitioned the Shelby Circuit Court for a writ of mandamus to compel the county commission to issue the permit. After evidence was taken, the circuit court denied the petition, and an appeal to this Court followed. We affirmed, stating:
 "Birmingham Water Works did not establish a clear right to this remedy. No statutory or case law establishes an imperative duty on Shelby County to grant an excavation permit to Birmingham Water Works to install its lines within the right-of-way of a Shelby County road. Birmingham Water Works argues that its `right' arises from its authorization to provide services outside the municipal limits of Birmingham; Atkinson v. City of Gadsden, 238 Ala. 556, 561, 192 So. 510 (1939), and its ability to expand or extend its system pursuant to § 11-50-235(a)(4), Ala. Code 1975 (1992 Repl. vol). We recognize the authority and ability provided by those statutes, but they do not convey upon Birmingham Water Works the right to install water lines within the right-of-way of Highway 41. The clear legal right to regulate public roads rests with Shelby County, based on § 23-1-80. We have stated many times that the general superintendence over county roads is with the county commissions. Barber v. Covington County Commission, 466 So.2d 945, 947-48 (Ala. 1985)."
624 So.2d at 1050.
Water Works Sewer Board of Birmingham makes it clear that Alabama law *Page 1073 
does not require the Commission to allow a private sewer company to install parallel pipelines in its existing right-of-way. The Commission could, however, grant such access by its own regulations and practices.
ECO argues that the Commission has in fact created a general right of access for private utilities to all county rights-of-way. To support that position, ECO presented to the trial court a document entitled "Jefferson County Subdivision, Land Development, and Construction Regulations." The scant portion of the document available in the record states: "Utilities have the right to install their lines and facilities on the rights-of-way of public roads and streets and like the County, their authorit[y] depend[s] on State laws and regulations." The regulations also indicate that they apply to "all public and private utilities," including those providing sewage services.
Relying on these provisions, ECO asserts that the Commission's decision to deny the second permit violated its regulations. Moreover, ECO contends that other similarly situated private utilities have been permitted under the regulations to use the rights-of-way to install sewer lines parallel to those rights-of-way.
The Commission responded by offering evidence indicating that it has not permitted other private sewer companies to use its rights-of-way for general sewer service to the public, but rather "[a]ll . . . private sanitary sewer lines that may have crossed County rights-of-way in the past served specific sites by agreement with the County Commission." After being given every opportunity for more than three years to present evidence rebutting the Commission's evidence, ECO failed to do so.
When presented with this evidence and ECO's arguments regarding the regulations, the trial court concluded that "[t]he reasons cited by the Commission in denying the permit form a solid and sound basis for its denial of [ECO's] request to install its private for[-]profit sewer line within and 2,050 feet along the County's right-of-way line. . . ." The trial court found that the regulations apply only to the development of subdivisions and not to existing rights-of-way that do not involve the development of a subdivision, such as the right-of-way at issue in this case. The trial court stated, in part:
 "Jefferson County has put evidence in the record before this Court that no similar for[-]profit sanitary sewer line installation has ever been allowed in any Jefferson County road right-of-way. [ECO] has had over three years to produce contrary evidence, but has failed to do so despite argument of counsel that he thought he knew of or has heard of other installations, one possibly in Shelby County associated with a plant in Shelby County and the other to a trailer park, the location of which was never presented to the Court. These statements were made by counsel during argument and do not constitute evidence. . . .
 "[ECO] contend[s] that the County Commission has violated its own subdivision rules and regulations. [ECO] rel[ies] on the provisions for installing utilities within proposed residential subdivision as authority for [its] claim that the County Commission violated its own rules and regulations in denying [its] permit to run a parallel sanitary sewer line within Jefferson County road rights-of-way. This argument is without merit since the subdivision rules and regulations apply to proposed subdivisions. There is no evidence before the Court that [ECO] proposed to build a subdivision requiring approval through the normal County Commission procedures for construction of houses and appurtenant utilities within a subdivision. [ECO's] application is solely for the use of County *Page 1074 
road rights-of-way, not subdivision streets as laid out on some plat of a proposed subdivision which is entirely distinguishable from the County's discretionary authority governing its power to regulate County roadways."
Although the record indicates that the trial court had before it the entire text of the regulations, ECO, the appellant, has failed to make the complete text a part of the record on appeal; instead, we are presented with selected excerpts from those regulations. Because this Court will not take judicial notice of county regulations, State ex rel. Edmunds v. Moses,231 Ala. 215, 218, 164 So. 562, 565 (Ala. 1935), and because ECO has failed to provide the full text of the regulations, we cannot conclude that the trial court's interpretation of the regulations was erroneous. See Eaton v. Shene, 282 Ala. 429, 430,212 So.2d 596, 598 (1968) ("Over and over this court has held that where there was evidence before the trial court, and not before us, which may have influenced it at arriving at the conclusion it reached, we cannot disturb that finding.").
ECO also contends that it has a legal right to the second permit under our decision in ECO I. ECO's reliance on ECO I, however, is misplaced. In ECO I, we stated:
 "The Commission argues that . . . it has the exclusive right to operate a sewer system in Jefferson County. It also argues that it can deny [ECO] . . . the requested permit to use a right-of-way on county roads based on its general superintendence over public roads in the county. See § 23-1-80, Ala. Code 1975. While the county commission does have general superintendence authority over public roads, see Water Works Sewer Board of the City of Birmingham v. Shelby County, 624 So.2d 1047, 1050 (Ala. 1993), and Barber v. Covington County Commission, 466 So.2d 945, 947-48
(Ala. 1985), this regulatory authority is not unlimited, and we find no authority for the proposition that the Jefferson County Commission has the exclusive right to maintain a sewer system in Jefferson County.
 "After considering the pleadings, the oral arguments of the parties, and the legal principles involved, the trial court granted [ECO] . . . declaratory and injunctive relief. In doing so, the trial judge found that the Commission had failed to `convince [the court] that Alabama law grants Jefferson County the exclusive right to provide sanitary sewer service in Jefferson County.' The trial judge also found that the Commission had failed to provide `any evidence that the single crossing in question' would, in any way, damage the right-of-way, create any hazard on the right-of-way, or interfere with the use of the right-of-way by any other entity.
 "We conclude that the trial judge did not err. The partial summary judgment is affirmed."
788 So.2d at 127.
Thus, ECO I held (1) that Jefferson County does not have the right to maintain a monopoly on a sewer system in that county, and (2) that ECO was entitled to an excavation permit for a single perpendicular crossing of its private sewer line under a county road right-of-way. ECO I did not hold, however, that the Commission must allow any private utility to run pipelines parallel to county roads within the county rights-of-way. ECOI, therefore, does not establish that ECO has a legal right to the second permit.
We conclude that ECO has failed to demonstrate that it has a legal right to use the county right-of-way as proposed in its application for a permit. It is clear under Alabama law that the Commission is not required by statute to grant ECO access *Page 1075 
to county road rights-of-way for the installation of parallel private sewer lines, and ECO has not established that the Commission's decision to deny it a permit for such installation was arbitrary or capricious in light of the Commission's regulations or practices.
AFFIRMED.
SEE, HARWOOD, STUART, and BOLIN, JJ., concur.
[1] The complaint originally named Jerry Drake, a former director of the Roads and Transportation Department of Jefferson County, as the second defendant. Mr. Drake has since died, and his successor, Wayne R. Sullivan, was substituted as a defendant on March 21, 2000. See Rule 25(d), Ala. R. Civ. P.
[2] ECO's brief to this Court refers to two plaintiffs-intervenors, Knobloch, Inc., and Petro Stopping Centers, L.P., as "appellants." However, ECO's notice of appeal and docketing statement make no reference to those parties. ECO is the sole appellant in this case. See Ala. R.App. P. 3(c) ("The notice of appeal shall specify the party or parties taking the appeal . . ."); Ala. R.App. P. 3(e) ("The appellant . . . shall complete and sign the docketing statement before it is filed with the court.").
[3] During a hearing before the circuit court on April 19, 2000, portions of a transcript of related proceedings before the Commission were read into the record. That transcript shows that, under questioning from one of the commissioners, Frazier Christy, a civil engineer employed by ECO on the project, testified that ECO sought the permit to use the Jefferson County right-of-way "to get from point A [in Tuscaloosa County] around to point B which is the Petro station. . . . The [Petro] station is in Tuscaloosa County[,] but . . . [t]he cheapest way is to go through Jefferson County to get there."
[4] The case was assigned to Judge Carl following Judge Thomas Woodall's election to the Supreme Court of Alabama.
[5] The case was assigned to Judge Brown following Judge Carl's retirement.
[6] The Commission has not preserved for appellate review any issues relating to the circuit court's refusal to grant its motions for involuntary dismissal.
[7] ECO also argues that because we applied the arbitrary-or-capricious standard in ECO I, see788 So.2d at 128, the "law of the case" doctrine requires that we do the same here. We disagree. Under the law-of-the-case doctrine, "whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decisionwas predicated continue to be the facts of the case." Blumbergv. Touche Ross Co., 514 So.2d 922, 924 (Ala. 1987) (emphasis added). The facts on which ECO I was decided are not the facts of this case. ECO I concerned a permit for a single perpendicular road crossing. The second permit, which is at issue here, relates to an entirely different (and significantly more extensive) project.
[8] The arbitrary exercise of governmental power may also violate the Equal Protection Clause of the United States Constitution. Vieth v. Jubelirer, 541 U.S. 267, 310,124 S.Ct. 1769, 158 L.Ed.2d 546 (2004) (Fourteenth Amendment empowers courts to determine whether state action is arbitrary or capricious).
[9] The Commission argues that our review of its decision is limited to whether that decision resulted from "fraud, corruption, or unfair dealings." In its order, the trial court concluded that ECO had "failed to meet [its] heavy burden of proving that the discretionary decision of the Commission amounts to arbitrary and capricious conduct so gross as to amount to fraud, corruption or unfair dealing." Although the trial court's order indicates that the court mixed the arbitrary-or-capricious standard with that relating to fraud, corruption, or unfair dealing, and although we have sometimes used the language on which the Commission relies, e.g., Darden v. Macon County,413 So.2d 1137, 1140 (Ala. 1982), the arbitrary-or-capricious standard is the appropriate standard to apply where the denial of a license or a permit is at issue.