MURDOCK, Justice.
East Central Baldwin County Water, Sewer and Fire Protection Authority ("ECBC") petitioned this Court for a writ of certiorari seeking review of the decision of the Court of Civil Appeals in East Central Baldwin County Water, Sewer & Fire Protection Authority v. Town of Summerdale, 252 So.3d 125 (Ala. Civ. App. 2016) (" Summerdale III"). In that decision, the Court of Civil Appeals affirmed a partial summary judgment of the Baldwin Circuit Court declaring that two amendments to the certificate of incorporation of ECBC approved by the Baldwin County Commission ("the county commission")-one in 2002 and the other in 2008-were void. We granted the petition; we reverse the decision of the Court of Civil Appeals and remand the cause for further proceedings.
I. Procedural History
In October 2009, the Town of Summerdale ("Summerdale") filed a complaint against ECBC and the county commission seeking a judgment declaring that the 2002 and 2008 amendments to ECBC's certificate of incorporation were void.[1] The 2002 amendment expanded ECBC's geographic service area, and the 2008 amendment authorized ECBC to include sewer services in certain parts of its service area. Summerdale sought a declaration that the *135 2002 amendment and the 2008 amendment were void because the county commission's approval of the amendments was based on incorrect facts set forth in the applications for the amendments. Specifically, Summerdale contended that the application for the 2002 amendment falsely stated that there was no other public water system adequate to serve the expanded geographic service area and that the application for the 2008 amendment falsely stated that there was no other public sewer system adequate to provide sewer services in ECBC's proposed sewer-service area. The City of Robertsdale ("Robertsdale") and Baldwin County Sewer Services, LLC ("BCSS"), also filed similar suits, which the trial court consolidated with Summerdale's suit. (Summerdale, Robertsdale, and BCSS are sometimes hereinafter referred to collectively as "the plaintiffs.")
In June 2012, the trial court entered a partial summary judgment declaring the 2002 amendment void, which it certified as final under Rule 54(b), Ala. R. Civ. P. On appeal, the Court of Civil Appeals, by order, set aside the Rule 54(b) certification and dismissed the appeal because the partial summary judgment did not address the validity of the 2008 amendment. East Central Baldwin Cty. Water, Sewer & Fire Prot. Auth. v. Town of Summerdale, (No. 2120106, Oct. 23, 2013), 171 So.3d 694 (Ala. Civ. App. 2013) (table). The trial court then entered a new order stating that its partial summary judgment also applied to the 2008 amendment.[2] ECBC appealed.
On appeal, the Court of Civil Appeals held that the plaintiffs lacked standing to challenge the 2002 amendment and the 2008 amendment. The Court of Civil Appeals dismissed the appeal with instructions to the trial court to set aside the void judgment and to dismiss the complaints to the extent that they challenged the 2002 amendment and the 2008 amendment. East Central Baldwin Cty. Water, Sewer & Fire Prot. Auth. v. Town of Summerdale, 252 So.3d 98 (Ala. Civ. App. 2015) (" Summerdale I"). Summerdale, Robertsdale, and BCSS then petitioned this Court for a writ of certiorari. This Court granted the writ (except as to one claim by Summerdale[3] ), and it reversed the judgment of the Court of Civil Appeals and remanded the case for further proceedings. Ex parte Town of Summerdale, 252 So.3d 111 (Ala. 2016) (" Summerdale II").
On remand, the Court of Civil Appeals addressed the remaining issues presented on appeal. The Court of Civil Appeals affirmed the partial summary judgment, concluding that the county commission's approval of the 2002 amendment and the 2008 amendment was void because the county commission had no authority to approve an application that contained incorrect statements of fact. Specifically, the Court of Civil Appeals held that the application for the 2002 amendment incorrectly stated that there was no adequate public water system in the expanded service area and that the application for the 2008 amendment incorrectly stated that there *136 was no adequate public sewer system in the proposed sewer-service area.
ECBC filed a petition for a writ of certiorari. This Court granted the petition.[4]
II. Facts
The parties stipulated to the following facts, which were set forth in the opinion of the Court of Civil Appeals in Summerdale I:
" 'ECBC is an Authority organized under Article 1, Chapter 88, Title 11, Code of Ala. (1975), as amended.
" '....
" '... On or about February 4, 2002, the Board of Directors of ECBC ... adopted a resolution proposing [an] amendment to [ECBC's] Certificate of Incorporation for the purpose of enlarging ECBC's service area to include certain additional territory for the purpose of providing water and fire protection services.
" '... On or about February 5, 2002, the Board of Directors of ECBC filed a written application with [the county commission] describing the proposed amendment and requesting that [the county commission] adopt a resolution declaring that it had reviewed the contents of the application, and after review, had found and determined as a matter of law that the statements contained in the application were true.
" '... On or about February 19, 2002, [the county commission] ... adopted a resolution in which it declared that it had reviewed the contents of said application, and after the review, had found and determined as a matter of law, that the statements contained in said application were true.
" '... On or about March 28, 2002, an Amendment to the Certificate of Incorporation of ECBC was recorded in the Office of the Judge of Probate of Baldwin County, Alabama, Instrument Number: 650808. Said Amendment added additional territory to ECBC's service area.
" '... On or about June 10, 2008, the Board of Directors of ECBC adopted a resolution proposing another amendment to its Certificate of Incorporation to make provision for the operation of a sewer system and requested that its name be changed to East Central Baldwin County Water, Sewer and Fire Protection Authority. The request was for all of the lands in its service area except for those areas already being serviced by BCSS....
" '... On or about June 18, 2008, the Board of Directors of ECBC filed a written application with [the county commission] which described the proposed amendment to the Certificate of Incorporation and requested that [the county commission] adopt a resolution declaring that it had reviewed the contents of the application and, after review, had found and determined as a matter of law that the statements contained in the application were true.
" '... The application states that "there is no public sewer system adequate to serve the territory in which it is proposed that [ECBC] will render sewer service."
" '... [The county commission] approved the application by adopting a resolution on about September 16, 2008.' "
*137 Summerdale I, 252 So.3d at 129 (emphasis added).
The opinion of the Court of Civil Appeals in Summerdale I also set forth additional facts:
"Further, the evidentiary materials submitted by the parties indicate the following. David Wilson, the mayor of Summerdale, testified in his deposition that, in 2002, Summerdale did not have definite plans to service the ECBC 2002 expanded service area. He testified that whether Summerdale would do so would depend on need and whether it was economically feasible to do so. He testified that Teresa Lucas, the engineer for ECBC, and Roy Dyess, a director for ECBC, had explained to the Summerdale city council before the adoption of the 2002 amendment that, if Summerdale ever annexed portions of the ECBC 2002 expanded service area into the city, Summerdale would have the option to purchase ECBC's system or lay water lines parallel to ECBC's lines. Wilson testified, and the minutes of the February 11, 2002, Summerdale city council meeting reflect, that he repeated Lucas's and Dyess's explanations at the council meeting and that Lucas had not objected to his statement. He testified that he had since learned that the federal statute under which ECBC has borrowed money prohibits parallel lines. John Resmondo, the manager of the public works for Summerdale, also testified that Summerdale could not afford to run water lines in the ECBC 2002 expanded service area.
"Charles Murphy, Robertsdale's mayor, testified in his deposition that he had not known what ECBC's service area was until 2005. He testified that Robertsdale had water lines that were located in the ECBC 2002 expanded service area before the 2002 amendment. Murphy testified that Robertsdale had had over 12 customers in one section of the ECBC 2002 expanded service area since 1994 or 1995, over 6 customers in another section since before 1994, about 10 customers in another section, and over 20 in another section. He testified that, at the time of the 2002 amendment, Robertsdale did not have definitive plans to offer further water services in the ECBC 2002 expanded service area. Since that time, Robertsdale had sought to purchase a portion of ECBC's service area. He testified that, at the time of his deposition, Robertsdale did not intend to provide services in the northern portion of the ECBC 2002 expanded service area unless it could make money there and that he did not expect that to happen in the foreseeable future. He testified, however, that if there were sufficient customers to pay for the cost of the expansion to get the desired rate of return, Robertsdale's system would have adequate capacity to provide water services in the northern portion of the ECBC 2002 expanded service area.
"Murphy testified that ECBC's authority to provide sewer services in its service area would pose a problem because ECBC would try to charge a franchise fee if Robertsdale were to seek to install sewer lines in the ECBC 2002 expanded service area.
"Murphy testified in his affidavit that 'ECBC's service area has been extended to include approximately one third (1/3) of Baldwin County, including the logical and abutting areas of [Robertsdale] and other service providers.' He further testified that, before the 2002 proposed expansion of the water-service area by ECBC, Robertsdale's 'water capacity and service capability quadrupled ECBC's existing water capacity and service capability.' He testified that, '[p]rior to the 2002 expansion request by ECBC, *138 no one from ECBC ... came before a Robertsdale work session or city council meeting with any details of a proposed water expansion area or a map outlining their intentions.' He testified that, had he known the specifics of the proposed plan, he would have requested that the Robertsdale city council oppose the expansion. He testified that 'Lucas[ ] met with [him] and explained that she worked for ECBC and they were considering putting some water somewhere east of Robertsdale, but [that she had] never produced a map with these exact details. The primary purpose of the meeting ... was that she wanted to introduce herself ... to solicit work from the City Of Robertsdale.' He testified that the first he had learned of the details of the 2002 expansion was in 2005 when he discovered that an area that Robertsdale was trying to provide service to was part of ECBC's service area. He testified that the ECBC 2002 expanded service area included Robertsdale's existing sewer-treatment plant where Robertsdale was already providing water. He testified that, '[p]rior to the 2002 expansion request by ECBC, ... Robertsdale was ready and adequate to provide water service to the [ECBC 2002 expanded service area].' Murphy also testified that, before the 2008 amendment, Robertsdale's 'sewer capacity and service capability dwarfed ECBC's existing sewer capacity and service capability ... [and] was ready and adequate to provide sewer service to the area encompassed by ECBC.'
"Wilson also testified that Summerdale had entered into an agreement on July 27, 2007, with BCSS to provide sewer services. Murphy testified that he did not want ECBC to have sewer authority because, he said, if Robertsdale were to annex any of the areas in the ECBC service area, Robertsdale would have to pay ECBC a franchise fee. Charles Hall, the manager for ECBC, testified that ECBC had borrowed money from the United States Department of Agriculture to construct its water system in the ECBC 2002 expanded service area. Hall testified that ECBC has the capacity to provide water services, but not sewer services, throughout its service area. He testified that ECBC was servicing all the parts of its service area where people had requested water services except a few places where it had not been feasible. He testified that ECBC has a protected service area regarding water services due to its agreement with the United States Department of Agriculture.
"Hall testified that, in 2005, ECBC had contracted with Alabama Utilities Services, Inc. ('AUS'), to provide sewer services in ECBC's service area but that that contract had expired. Hall testified that, on January 1, 2009, ECBC had entered into a franchise agreement with Integra Water Baldwin, LLC, to provide sewer services in ECBC's service area and that that franchise agreement was still in effect. He testified that, before the 2008 amendment, ECBC did not have an agreement with any provider to provide sewer services.
"Lucas testified by deposition that Wilson had dropped his objection to the 2002 amendment at the public hearing before the Summerdale city council. She testified that Summerdale and Robertsdale had been aware of the 2002 amendment and that neither city could adequately provide water for the ECBC 2002 expanded service area because none of them were providing it at the time. Lucas testified that she had met with Murphy before the 2002 amendment and that he had said that Robertsdale could not provide water services to *139 the ECBC 2002 expanded service area. She testified that she had assured Murphy that the expansion would not affect Robertsdale's ability to annex parts of that area and that Murphy, therefore, had had no concerns about the amendment. Lucas testified that there was no demand for sewer services in ECBC's service area.
"Lucas testified in her deposition that the 2002 expansion had taken ECBC's service area up to the city limits of Summerdale and Robertsdale, where those cities stopped providing water and sewer services. Lucas testified that, in July 2003, ECBC had obtained a 'Rural Utility Service Loan' from the United States Department of Agriculture in the amount of $3,037,500, and a grant in the amount of $2,362,500 for part of the 2002 expansion. She testified that she had known that no city would be able to lay a parallel water line once ECBC obtained a federal loan for its water system.
"In 2008, Robertsdale, Summerdale, and BCSS objected to the county commission's approving ECBC's application regarding the 2008 amendment. Two work sessions and one public hearing were held concerning the application. The minutes from those meetings reflect that Bob Willis, from ECBC, represented to the county commission that ECBC did not intend to actually provide sewer services in its service area and that ECBC did not have any definite plans for contracting to provide sewer services. Willis stated that ECBC did not intend to stop providers from servicing ECBC's service area but that he wanted providers to come to ECBC for oversight so that ECBC could realize revenue. Willis noted that ECBC had not sought to provide sewer services in the few places in its service area where there were existing sewer lines from other providers. Dan Blackburn, a representative of BCSS, stated that BCSS and some municipalities have sewer lines in the ECBC service area and that BCSS had the ability at that time to expand sewer services throughout ECBC's service area. Larry Sutley, a representative of Summerdale, stated that Summerdale and all the other surrounding cities had plans to expand sewer services into the ECBC service area. A representative of Robertsdale stated that Robertsdale had the same plan that ECBC had-if there is a need, it would provide sewer services in the ECBC service area. He stated that Robertsdale had the capability to do so.
"On November 17, 2008, ECBC demanded that BCSS 'submit to it any and all plans and specifications concerning the placement and construction of sewer lines for which it has received permitting from Baldwin County and, further, that no action be taken by BCSS to construct or put said lines into place until ECBC has had an opportunity to review said plans and specifications.' It also requested that 'any plans for the placement or construction of sewer lines and/or sewer systems within ECBC's service area be submitted to it prior to making permit application with Baldwin County.' Finally, it requested that no 'permits for any portion of a sewer system to be located in our service area be issued by the [county commission] without prior approval from ECBC.'
"ECBC stipulated: 'It is undisputed that at the time ECBC made application to [the county commission] in 2002 to expand its service area that there were a number of small pockets where the City of Robertsdale actually had some water lines in the ground. The total number of customers was probably less than twenty-five (25).' "
*140 Summerdale I, 252 So.3d at 106 (emphasis added).
In Summerdale II, this Court stated additional relevant facts:
"With regard to Robertsdale, as noted, its mayor Charles Murphy testified that before the 2008 amendment Robertsdale's 'sewer capacity and service capability dwarfed ECBC's existing sewer capacity and service capability' and that Robertsdale's sewer-treatment plant was located within ECBC's expanded service area. Murphy testified that Robertsdale's sewer-treatment plant has been in the same location since 1979 and that Robertsdale was capable of providing sewer service to residents in ECBC's expanded service area.
"Finally, the head manager of BCSS, Clarence Burke, Jr., testified that the reason BCSS purchased Summerdale's sewer system was that doing so would give BCSS the ability to interconnect all of its systems but would require laying sewer lines through ECBC's expanded service areas. BCSS could not carry out that project absent approval from ECBC because of the grant of sewer service to ECBC in its expanded service area by the 2008 amendment."
Summerdale II, 252 So.3d at 118 (emphasis added).
On June 22, 2012, the trial court entered an order stating:
"Based on the application made by Defendant, ECBC, to the [county commission] containing geographic areas in Robertsdale, Alabama community that were already being served by the City of Robertsdale, the application contained incorrect information. The Court is not in a position to 'carve out' corrections to the application and approval. Therefore, the [county commission's] approval of ECBC's application should be set aside and by this Order is deemed set aside."
(Emphasis added.)
In September 2013, the trial court entered an order denying ECBC's motion to reconsider, stating, in pertinent part:
" '5. ECBC has conceded in court that a small number of citizens that were included in the territory covered by the 2002 Amendment were, in fact, at the time actually being served by City of Robertsdale's water system.
" '6. Given that the Application to the County was simply the Amendment in proposed form, the Court previously determined that the Application included facts that were not true. As a result, the [county commission] approved an application for expansion of the ECBC territory, based on facts that were not true.
" 'Based on the evidence and law presented, this Court found in the Summary Judgment that the governing body (Baldwin County) acted upon the assumption that the statements in the application were true when in fact the 2002 application contained statements that were not true and therefore, the approval was not valid. After review of the case and arguments of the attorneys, the Court finds nothing to change its original ruling.' "
Summerdale I, 252 So.3d at 101 (emphasis added).
III. Standard of Appellate Review
" 'This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law.
*141 Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce "substantial evidence" as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989) ; Ala. Code 1975, § 12-21-12. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala. 1989).'
" Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala. 2004)." Ex parte Jackson Cty. Bd. of Educ., 4 So.3d 1099, 1102 (Ala. 2008).
IV. Analysis
A. Appropriate Standard for the Trial Court's Review of the County Commission's Decisions
1. Was the County Commission's Approval a Mandatory or a Discretionary Act?
In Summerdale III, the Court of Civil Appeals stated:
"ECBC argues that the county commission's actions in approving the 2002 amendment and the 2008 amendment are not subject to judicial review unless those actions were the result of 'fraud, corruption, or unfair dealings' and that, if the amendments are subject to judicial review, the county commission's actions are presumed to be valid unless they were arbitrary and capricious.
" '[T]he action of a county governing body in the exercise of discretionary powers vested in it is not subject to judicial review except for fraud, corruption or unfair dealing.' Bentley v. County Comm'n for Russell Cty., 264 Ala. 106, 109, 84 So.2d 490, 493 (1955). Furthermore, the standard of review of a local government's exercise of its discretionary powers is whether its actions were 'arbitrary and capricious.' ECO Preservation Servs., LLC v. Jefferson Cty. Comm'n, 933 So.2d 1067, 1071 (Ala. 2006). As noted by this court in Jefferson County v. Weinrib, 36 So.3d 508 (Ala. 2009), however, although review of discretionary actions of county commissions is limited, when the actions are not discretionary, the limited jurisdiction to review those actions is not applicable. 36 So.3d at 511 n.4....
"Similarly, in the present case, as in Weinrib, Robertsdale, Summerdale, and BCSS have argued that, because the facts set forth in ECBC's applications were not true, the county commission lacked the discretion to approve the applications. Therefore, if the statute at issue in this case is mandatory and not discretionary, the trial court's and this court's review of the county commission's decisions are not limited under the holdings of Bentley and ECO Preservation Services.... Accordingly, we conclude that the county commission's actions in approving the 2002 amendment and the 2008 amendment were not based on an act of discretion; instead, the county commission had no choice but to deny the applications if the facts in the applications were not true. Because the county commission's actions were not discretionary, we conclude that ECBC's arguments-that the 2002 amendment and the 2008 amendment are not subject to judicial review unless those actions were the result of 'fraud, corruption, or *142 unfair dealings' and that, if the amendments are subject to judicial review, the county commission's actions are presumed to be valid unless they were arbitrary and capricious-are without merit. The trial court's and this court's review of the county commission's actions are not contingent upon a showing of 'fraud, corruption, or unfair dealings' and are not subject to the limited 'arbitrary and capricious' standard of review."
Summerdale III, 252 So.3d at 130 (emphasis added).
In its petition to this Court, ECBC asserts conflicts with Archer v. Estate of Archer, 45 So.3d 1259 (Ala. 2010), Bentley v. County Commission of Russell County, 264 Ala. 106, 84 So.2d 490 (1955), and ECO Preservation Services, LLC v. Jefferson County Commission, 933 So.2d 1067 (Ala. 2006), as to the issue whether the county commission's review and approval involved mandatory or discretionary duties. ECBC contends that, if the entire controlling statute is given effect, the county commission's decision to approve or to deny an application for an amendment to a certificate of incorporation is discretionary, and not mandatory.
ECBC is organized under the provisions of Ala. Code 1975, § 11-88-1 et seq., as a "water, sewer and fire protection authority."[5] Such authorities are public corporations that are "independent instrumentalities of the state," see § 11-88-2, Ala. Code 1975, created to provide water, sewer, and/or fire-protection services in designated geographic areas. Under §§ 11-88-3 and 11-88-4, Ala. Code 1975, such an authority is not to file its certificate of incorporation and does not come into existence until the governing body of each county within the proposed service area of the authority has approved the application for incorporation. Likewise, § 11-88-5, Ala. Code 1975, provides that any amendment to an authority's certificate of incorporation (including a change in the geographic service area or a change in the type of services provided) must likewise be approved by the applicable county governing bodies. In this case, the county commission is the only applicable governing body.
Section 11-88-5 provides that an application for an amendment to the certificate of incorporation must include certain information. Among other things, the application must
"(2) State, in the event that it is proposed to add any new territory to the service area of the authority, that there is no public water system adequate to serve any new territory in which it is proposed that the authority will render water service, [and] that there is no public sewer system adequate to serve any new territory in which it is proposed that the authority will render sewer service ....
"(3) State that the said amendment will promote the public health, convenience, and welfare ...."
§ 11-88-5(c) (emphasis added).
Section 11-88-5(d) provides for review of an application by each relevant governing body as follows:
"(d) As promptly as may be practicable after the filing of the said application *143 with any governing body pursuant to the foregoing provisions of subsection (c) of this section, that governing body shall review the said application and shall find and determine whether the statements in the said application are true.... If the said governing body finds and determines that the statements in the said application are true, it shall adopt a resolution declaring that it has reviewed the said application and has found and determined as a matter of fact that the statements in the said application are true. If the said governing body finds and determines that the statements in the said application are not true, it shall deny the application. In the event that any such application shows that the authority proposes to make provision for the operation of a system or facility not then provided for in its certificate of incorporation, any governing body with whom such application is filed may, without any investigation or further consideration, assume that any statement therein that the authority proposes to render service from such a new system or facility is true and may, without any investigation or further consideration, so find and determine in such resolution."
(Emphasis added.)
The plaintiffs argue, consistent with the holding of the Court of Civil Appeals, that the county commission had no discretion with regard to the approval or denial of ECBC's applications for amendments to its certificate of incorporation and that any false statement[6] in an application renders the county's commission's approval "void." This argument misreads the statute in at least three respects.
First, the argument misreads the statute as stating that the governing body reviewing the application shall deny the application if certain facts are untrue. Although the plaintiffs' mistake is understandable, that is not actually what the statute says. Instead, the statute provides that, "[i]f the said governing body finds and determines that the statements in the said application are not true, it shall deny the application." (Emphasis added.)
Second, the plaintiffs' argument fails to address the essential nature of the review process provided in the statute. Section 11-88-5(d) provides that the governing body shall review an application and shall make certain findings and determinations. The ensuing duty to approve or to deny an application arises only after the governing body has conducted that review and made such findings and determinations, and the manner in which the duty is then executed is to be based on those findings and determinations. The legislature's use of the terms "review," "find," and "determine" strongly suggests that the legislature intended the review process to be discretionary, and not mandatory.[7] This conclusion is bolstered by the use in the statute of qualitative criteria ("adequate" service and "promot[ing] the public health, convenience and welfare"). Such a review is inherently discretionary.
Moreover, the discretionary nature of the review process by the governing body is bolstered by the fact that the same *144 review process applies both to the commission's assessment of the required statement in the application about adequate service and its assessment of the required statement "that the said amendment will promote the public health, convenience, and welfare." Ala. Code 1975, § 11-88-5(c)(3). Whether something will promote "the public health, convenience, and welfare" clearly involves a discretionary decision, and the parallel structure of the statutory language addressing the review process suggests that all the findings are similarly discretionary. Contrary to the plaintiffs' argument, the statute does not contemplate two qualitatively different processes, one in which certain statements in the application must actually be true (in the sense that a court could make a de novo decision after the fact on the matter), and then, only if this first condition is met, a second process in which the commission has authority to conduct a discretionary review as to whether the amendment will promote the public health, convenience, and welfare.
In this case, the county commission reviewed each application, including holding "work sessions" and a public hearing as to the 2008 amendment.[8] Thereafter, the county commission found the facts in each application to be correct, and it approved each amendment based on those findings. To the extent that there is a mandatory duty, it is to act consistent with its own findings made at the end of the review process, which the county commission did.
Third, the plaintiffs' argument does not adequately consider whom the legislature intended to make the determination as to the truth or falsity of the statements in the application. The approach advocated by the plaintiffs will, in many cases, shift ultimate responsibility for a policy decision regarding public water and sewer systems from the relevant governing bodies to a circuit judge (who might not even sit in the county in which the authority seeking the amendment is located). The members of the governing body or bodies are elected officials who have responsibilities regarding public infrastructure. These officials often receive complaints about public services (or the lack thereof), and they are generally aware of the county's finances, infrastructure needs, and development plans. The legislature no doubt contemplated that a governing body is typically in a much better position than is a circuit judge to evaluate the need for additional public water and sewer systems and to determine whether a particular proposed new facility or service area will promote the public health, convenience, and welfare.
Accordingly, we conclude that a governing body's duty to review and approve applications is a discretionary one.
2. Is the County Commission's Approval of the Applications Subject to Judicial Review?
A related issue is whether, and to what extent, a governing body's decision to *145 approve or deny an authority's application to amend its certificate of incorporation to provide additional services is subject to judicial review. ECBC argues (1) that the county commission's actions in approving the 2002 amendment and the 2008 amendment are not subject to judicial review unless those actions were the result of "fraud, corruption, or unfair dealings" and (2) that, if the amendments are subject to judicial review, the county commission's actions are presumed valid unless they were arbitrary and capricious.
The plaintiffs argue that the county commission's approval of the 2002 and the 2008 amendments was void because it was under a mandatory duty to deny an application containing incorrect statements of fact.[9] The plaintiffs cite Chism v. Jefferson County, 954 So.2d 1058, 1073 (Ala. 2006), and Dillard v. Baldwin County Commission, 833 So.2d 11, 16 (Ala. 2002), for the generalized propositions (1) that counties in Alabama are creatures of statute and can exercise only that authority conferred on them by the legislature, and (2) that "enactments conferring power upon county governing boards will be strictly and narrowly construed." The plaintiffs do not explain how those generalized principles of law apply to this case, nor do they address the authority explicitly conferred on governing bodies by § 11-88-1 et seq. to review applications such as those at issue here, to make findings of fact, and to approve or deny those applications.[10]
ECBC cites a number of our prior cases that use the "fraud, corruption, or unfair dealings" language, but we do not agree that that is the proper test. Most of the cases ECBC cites for that proposition involved legislative decisions of a county commission, such as the issuance of bonds or the construction of roads, bridges, and public buildings. See, e.g., Bentley v. County Comm'n for Russell Cty., 264 Ala. 106, 84 So.2d 490 (1956) (upholding issuance of warrants to finance road and bridge improvements against challenge asserting fraud, corruption, or unfair dealing by county commission); O'Rear v. Sartain, 193 Ala. 275, 288, 69 So. 554, 558 (1915) (same); and Board of Revenue of Etowah Cty. v. Hutchins, 250 Ala. 173, 33 So.2d 737 (1948) (holding that county board of revenue has discretion to issue bonds to finance new jail and courthouse in new location, asserting fraud, corruption, or unfair dealings).
Our prior cases have sometimes mixed the arbitrary-or-capricious standard with the standard relating to fraud, corruption, or unfair dealing, but the arbitrary-or-capricious standard is the appropriate standard for an issue such as that presented here. In ECO Preservation Services, LLC v. Jefferson County Commission, supra, this Court rejected the "fraud, corruption, or unfair dealings" standard when the county commission refused to grant a right-of-way for construction of a private sewer line. This Court held that, "[a]lthough our cases have not always used the words 'arbitrary or capricious,' we have consistently applied that standard in practice when reviewing a county's decision to grant or deny a license or permit." 933 So.2d at 1071.
*146 We conclude that the kind of county commission approval at issue here is analogous to the grant or denial of a license or permit. Accordingly, we review the county commission's approval of the amendments under the arbitrary-or-capricious standard.
B. Were There Adequate Public Water Services and Adequate Public Sewer Services in the Expanded Service Areas?
The plaintiffs argue that the county commission should have denied ECBC's applications because the applications incorrectly stated that the relevant areas were not adequately served by water systems or sewer systems, as the case may be, at the time the applications were approved.
As regards the adequacy of the existing systems, the 2016 opinion of the Court of Civil Appeals stated:
" 'Adequate' is defined as 'sufficient for a specific requirement,' 'barely sufficient or satisfactory,' and 'lawfully and reasonably sufficient.' Merriam-Webster's Collegiate Dictionary 15 (11th ed. 2003). According to Robertsdale, Summerdale, and BCSS, there were public water systems and public sewer systems that were capable of providing services in the 2002 ECBC expanded service area and that were 'adequate' for the purposes of § 11-88-5, despite the fact that Robertsdale and Summerdale had chosen not to offer services in that entire area....
"....
"... [W]e construe the meaning of the term 'adequate' as used [in] § 11-88-5 to be 'capable of providing services,' as argued by Robertsdale, Summerdale, and BCSS...."
Summerdale III, 252 So.3d at 132 (some emphasis added).
We cannot conclude that the existing systems are "adequate" merely because nearby municipalities "are capable of" providing water and sewer services to the proposed service areas. This interpretation ignores the purpose of water, sewer, and fire-protection authorities, which is to provide services to the public in areas not otherwise served.[11] If the pertinent area does not have a particular service and if there are no present plans to provide that service, the service in the area is not "adequate," regardless of what capacities nearby municipalities possess. Adequacy of service must be viewed from the perspective of residents and businesses in the target area and must be evaluated based on the services that are actually provided (or that are planned to be provided) in the target area, not on the existence of some theoretical capacity to provide services.
In the present case, there was evidence indicating that, in 2002, water service was provided to only a small number of customers *147 in the proposed extension of the service area and that neither Summerdale nor Robertsdale had plans to add service in the area in the foreseeable future, in part because such service was not economically feasible. There was evidence indicating (1) that Summerdale and Robertsdale were aware of ECBC's proposal that became the 2002 amendment, (2) that representatives from ECBC met with representatives of Summerdale and Robertsdale before the 2002 amendment was approved, and (3) that the Summerdale Town Council approved the 2002 amendment. Those facts are consistent with the county commission's implicit finding that the public water and public sewer systems in the proposed extension of the service area were not adequate.[12] At a minimum, these facts preclude a summary judgment.
There was other evidence to the contrary, including evidence indicating that ECBC allegedly made misstatements to Summerdale and Robertsdale as to certain elements of ECBC's plans. The present case was decided on a partial summary judgment. Although it ruled in favor of Summerdale and Robertsdale, the trial court, for all that appears, did not decide those factual issues.[13]
V. Conclusion
Accordingly, we conclude that the Court of Civil Appeals applied the wrong standard of review and that, therefore, its decision is due to be reversed. We also conclude that the summary judgment was erroneous because (1) it did not give appropriate weight to the county commission's findings as to the adequacy of the existing services and (2) there appear to be genuine questions of material fact that would preclude a summary judgment.
Accordingly, we reverse the decision of the Court of Civil Appeals and remand the cause for further proceedings.
REVERSED AND REMANDED.
Parker, Wise, Bryan, and Sellers, JJ., concur.
Bolin and Shaw, JJ., concur in the result.
Main, J., dissents.
Stuart, C.J., recuses herself.

ECBC is a public corporation incorporated under the provisions of Ala. Code 1975, § 11-88-1 et seq. See Part IV.A.1, infra.

The new partial summary judgment did not adjudicate a contract claim by Summerdale against ECBC alleging that ECBC had breached a franchise agreement regarding the Shadyfield Estates subdivision. That claim is not before us; it apparently remains pending in the trial court.

We did not grant certiorari review as to Summerdale's challenge to the 2008 amendment authorizing sewer service in part of ECBC's service area. Summerdale had sold its sewer system to BCSS and, therefore, no longer had an interest in providing sewer service.

In its brief in support of its petition for a writ of certiorari, ECBC attempts to raise an argument that Summerdale and Robertsdale are estopped from denying the validity of the county commission's approval of the 2002 and 2008 applications. ECBC did not raise that issue in its petition, and we will not consider it at this juncture.

ECBC was originally incorporated as "Rosington Water and Fire Protection Authority" and originally provided only water and fire-protection services. The 2002 amendment expanded the territory served and changed the name of the authority to "East Central Baldwin County Water and Fire Protection Authority." The 2008 amendment changed the name of the authority to "East Central Baldwin County Water, Sewer and Fire Protection Authority" and made provision for ECBC to include sewer services in parts of its designated territory.

The plaintiffs' briefs to this Court do not address materiality or limit their arguments to material untruths. The trial court apparently based its decision on the fact that Robertsdale had a few customers in a small portion of the 2002 expanded service area.

Merriam-Webster's Collegiate Dictionary 340 (11th ed. 2003) defines "determine" as, among other things, "to find out or come to a decision about by investigation, reasoning, or calculation"; "to come to a decision." "Find" is defined as, among other things, "to discover by the intellect or the feelings"; "to determine and make a statement about < [find] a verdict>." Id. at 469

There was evidence before the trial court indicating that Summerdale initially objected to ECBC's 2002 application but later dropped its objection. There was also evidence indicating that, as to the 2008 application, ECBC reduced its proposed service area in response to statements made to the county commission by representatives of nearby municipalities and utility providers.
The plaintiffs argue that the county commission did not conduct an adequate review of the applications for the amendments, but they do not cite any authority as to what constitutes an adequate review, and they do not explain what additional investigation the county commission should have performed. Further, the governing body's discretion in conducting the required review also includes the discretion to determine what review or investigation is appropriate in any given case.

The plaintiffs frame their argument in terms of an approval being void, suggesting that the circuit court may conduct a de novo review into the truth or falsity of the statements in the application. That argument is not explicitly made, but it follows from the argument they do make.

The plaintiffs do not explain how a decision by a governing body, pursuant to the specific authority of § 11-88-5(d), is void merely because the decision is later determined to have been incorrect.

The Court of Civil Appeals based its analysis of the adequacy issue in part on a conclusion that, under the purpose clause of Ala. Code 1975, § 11-88-2, water, sewer, and fire-protection authorities (such as ECBC) are intended to aid the State (and the surrounding municipalities) and not to benefit the public. Although the parties do not address the public-benefit issue, we note our disagreement with the notion expressed by the Court of Civil Appeals. First, it appears that water, sewer, and fire-protection authorities are authorized for the benefit of the public. See Limestone Cty. Water & Sewer Auth. v. City of Athens, 896 So.2d 531, 536 (Ala. Civ. App. 2004) (holding that a water and sewer authority organized under § 11-88-1 et seq. is a "public corporation" and "is an 'instrumentality of the state' in the sense that it is created pursuant to the laws of the State and for the public benefit"). Second, there is no suggestion in the statute (or in logic) that water, sewer, and fire-protection authorities are intended to benefit municipalities such as Summerdale and Robertsdale.

Summerdale argues that ECBC's expansion of its service area, together with certain federal statutory provisions, gives ECBC a monopoly on providing water and sewer services in the expanded service area and effectively cuts off Summerdale and Robertsdale from expansion beyond their existing corporate limits. That is an objection that should have been addressed to the county commission before the applications for the amendments were approved. Further, whether the applicable statutes give too much leverage to authorities vis-à-vis municipalities appears to be a policy question to be addressed by the legislature. We do note, however, that ECBC acted to fill a perceived need for water and sewer services at a time when the municipalities were unwilling to act.

Among other things, there remain factual questions as to what representations were made to the mayors and council members of Summerdale and Robertsdale, whether the representations were materially untrue, and whether Summerdale and Robertsdale detrimentally relied on those representations. Likewise, the trial court will have an opportunity to address the various estoppel claims that have been raised by the various parties on appeal.